Filed 7/24/14  P. v. Iniguez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>ANDRES INIGUEZ,<br><br>  Defendant and Appellant. | H038896<br>(Santa Clara County<br> Super. Ct. No. C1197826) |

## I.  INTRODUCTION

Defendant Andres Iniguez appeals after conviction, by jury trial, of three counts of committing a lewd or lascivious act on a child under the age of 14 (Pen. Code, § 288, subd. (a)[1]), three counts of aggravated sexual assault of a child under the age of 14 (§ 269), five counts of committing a forcible lewd or lascivious act on a child under the age of 14 (§ 288, subd. (b)(1)), and one count of attempted lewd or lascivious act on a child aged 14 or 15 (§§ 664/288, subd. (c)(1)).  Defendant was sentenced to an indeterminate prison term of 45 years to life, consecutive to an aggregate determinate term of 38 years.

On appeal, defendant contends:  (1) there was no substantial evidence that he used force, fear, or duress to commit the aggravated sexual assaults or the forcible lewd or lascivious acts; (2) the prosecution failed to prove he did not reasonably believe the

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

victim consented to sexual intercourse, and the trial court failed to properly instruct the jury on the definition of consent; (3) the trial court erred by failing to give lesser included offense instructions as to the aggravated sexual assault counts; (4) there was no substantial evidence that he lewdly touched the victim on one occasion; (5) the trial court erroneously told the jury that it could not consider lesser offenses if it could not agree on the greater charges; (6) there was cumulative error; (7) the trial court erred by imposing a full-term consecutive sentence on one count; and (8) the trial court erred by imposing an AIDS education fee, along with penalty assessments.

For reasons that we will explain, we find insufficient evidence to support one count of committing a forcible lewd and lascivious act on a child under the age of 14 (count 16), and we will reduce that count to a misdemeanor battery and stay the sentence pursuant to section 654. We will also strike the AIDS education fee and associated penalty assessments. We will affirm the judgment as modified.

## II.    BACKGROUND

### A.    *Family Background and Discovery of Sexual Abuse*

Defendant was the live-in boyfriend of Maria F. and the father of two of her children. Maria had five other children, including Monica Doe, who was born in January of 1997. Defendant was 29 years older than Monica.

Monica and her siblings lived in Mexico from the time Monica was one and a half years old until 2005, when the family moved in with defendant in San Jose. At that point, Monica was eight years old and entering the third grade.

From 2005 until late 2007 or early 2008, Monica and her family shared an apartment with extended family (the first apartment). Monica was in third, fourth, and fifth grades during this time period, and she was eight to 10 or 11 years old. In the first apartment, Monica, Maria, defendant, and defendant's daughter all shared a room. Sometimes Maria and defendant would sleep on the bed, with the girls sleeping on the

2

floor. Sometimes the girls would sleep on the bed, with Maria and defendant sleeping on the floor.

The family then moved to a three-bedroom apartment with defendant (the second apartment). Monica and her half-sibling initially had their own bedroom in the second apartment. However, the family later rented out two of the bedrooms. At that point, Maria, defendant, Monica, and defendant's daughter all shared a bedroom. There was only one bed, and sometimes all four of them slept in the bed or on the floor together. After Maria gave birth to defendant's younger daughter in December of 2008, Maria and the baby slept on the bed while defendant, Monica, and defendant's older daughter slept on the floor. Monica was 11 years old and in fifth grade at that time.

On January 16, 2011 (shortly after Monica's fourteenth birthday), the family was getting ready for church. Maria prepared breakfast, then went to tell Monica and defendant that breakfast was ready. Through the bedroom doorway, she saw defendant touch Monica's vagina, over her pants. Monica moved her arm to hide her face when defendant touched her, "like she didn't like it." Monica also moved her hand as if to push defendant's hand away. After observing the incident, Maria went into the bedroom, hit defendant, and told him to leave.

Maria asked Monica what had happened. Monica responded, "Everything," and said that defendant had been molesting her since they had lived in the first apartment. Maria called the police a few days later.

### B. *Medical Exam*

Mary Ritter, a physician assistant at Valley Medical Center's Sexual Assault Response Team (SART), performed a SART examination on Monica on February 3, 2011. Monica told Ritter that defendant had touched her in her front and back private areas starting at age eight. At age 11, defendant began putting his penis into her vagina. Sometimes this was painful. Monica bled once, and sometimes she had pain when she urinated. Defendant also put his penis into her anus, which caused her to have a painful

3

bowel movement.  Defendant would ejaculate.  He had also touched her breast with his hand, and he had put his mouth on her breast.

The SART exam revealed that Monica's hymenal tissue was very narrow in three places.  The narrowing had been caused by penetrating injuries, which had healed.  Ritter could not tell what caused the injuries and whether the penetration had been consensual or not.  The injuries were at least two weeks old.

## C.    *Monica's Trial Testimony*

Monica was 15 years old at the time of trial.  Defendant began inappropriately touching her when the family lived in the first apartment—sometime  between 2005 and 2008, when Monica was eight to 10 or 11 years old.  Defendant initially touched her less than once a month.  Defendant began touching her more often—"like every three days, two days"—when the family moved to the second apartment.  Defendant would touch her vagina and breasts.  He touched the inside of her vagina two or three times.  On two occasions, defendant tried to put Monica's mouth on his penis.

Monica did not remember how old she was when defendant began having sexual intercourse with her, but she recalled that it occurred in 2010 (when Monica was 13 years old) and that it occurred after the family began living in the second apartment.  Monica could not remember if it also occurred in 2009 (when she was 12 years old).  Defendant had sexual intercourse with Monica about once or twice each week.

Monica recalled two specific incidents of sexual intercourse.  One incident occurred after she and defendant had gone to the gym together.  On that occasion, Monica tried to stop defendant by going to the bathroom, but defendant "wouldn't let [her] stop him."

The second specific incident of sexual intercourse occurred in December of 2010, when Monica was 13 years old.  This was the last time that they had sexual intercourse.  Defendant had begun touching her when she was sleeping on the floor.  Monica

4

submitted when defendant put his penis inside of her and did not try to cry out, because she did not want anyone to notice and she "didn't want to go through all of this."

Although defendant was bigger than Monica, she was not afraid of him. Defendant had never slapped her, held her arms down, or threatened her. However, he did hold her arm "hard" when they had sexual intercourse. Defendant would "grab" her before he put his penis into her vagina.

Monica did not want defendant to touch her. She believed defendant knew that she did not want to engage in sexual intercourse with him. Monica would tell defendant that she "didn't want him to be doing that" or to "stop doing that," but he "wouldn't listen" to her. When Monica slept next to defendant, she would wrap a blanket around herself. Defendant would try to uncover her and turn her. She would try to turn away when he tried to put his penis inside her vagina, and sometimes, defendant would stop. Monica would also push defendant away from her, or pull her pants up after defendant had pulled them down. Defendant would "[s]ometimes" stop after she did so. Defendant would stop molesting Monica if she got angry with him, but she could not stay angry at him because her mother would notice.

Defendant once asked Monica if anyone knew what they were doing. He told her that if her mother ever asked "if there was something going on," Monica should say that her mother was wrong. Monica did not tell her mother about the sexual abuse. Although her mother was often in the bedroom during the incidents, Monica did not cry out. She did not want her mother to notice or "get hurt." She explained, "I didn't know what was going to be [defendant's] reaction towards me or my mom if he knew that I told her." If her mother knew, Monica would have to "go through all of this," defendant would leave, and her mother would not have "someone to help her out."

Monica had also been sexually abused by an older brother. The brother had touched Monica when she was eight or nine years old. Usually, he touched her vagina and breasts, but on one occasion he put his penis into her vagina. Defendant saw that

5

incident. In about 2009, Monica told her cousin that someone had touched her inappropriately when she had been living in Mexico.

## D.     *Defendant's Admissions*

Defendant was arrested on January 19, 2011 and interviewed by two detectives that day.

Regarding the incident that Monica's mother had observed, defendant initially said he had only touched Monica's stomach area while playing with her. Defendant eventually admitted touching Monica's vagina over her clothing, but he continued to claim he had just been "playing around with her."

Defendant admitted that he had begun touching Monica when she was 11 or 12 years old. He had touched her breast, over her bra, and her vagina, both outside and inside of her underwear. He had touched her buttocks area as well. Once or twice, defendant had grabbed Monica's hand and put it on his penis.

Defendant admitted having sex with Monica beginning when she was 11 years old, before his younger daughter was born. At first, defendant said it had happened only three or four times, but he later said it had happened ten times or less. After an officer asked defendant to describe "how everything started" and suggested that Monica might have "wanted it too," defendant asserted that Monica had pulled her pants down and leaned against him, saying she wanted to know " 'what it feels like.' "

Defendant described how he and Monica would usually have sex at night when they were sleeping on the floor. He would face Monica while she had her back to him. Monica would pull her pants down and push her buttocks against his groin "because she wanted to have sex with him." Sometimes he would be the one to pull her pants down. Defendant had put his finger into Monica's vagina several times, claiming her vagina had been wet. Defendant described putting his hand on Monica's shoulder during sex.

At the end of his interview, defendant wrote apology letters to Monica and Maria. He asked Maria to forgive him "for all the damage[] I have done" and swore he would

6

never do "this" again. In his letter to Monica, he similarly acknowledged that he "did so much damage" to her. He apologized and asked for her forgiveness.

## E. CSAAS Expert

Carl Lewis, a trainer on child abuse issues and a licensed private investigator, testified about Child Sexual Abuse Accommodation Syndrome (CSAAS). He testified that victims of sexual abuse are often fearful of what will happen if they disclose the abuse. A child may be scared that the family situation will change; the family may be dependent upon the abuser for support. Children commonly find a way to act like nothing is happening. Because of the "built in" fear component, it is uncommon for a child to seek help. Children also often hold back details of sexual abuse.

## F. Charges and Verdicts

Defendant was charged with six counts of committing a lewd or lascivious act on a child under the age of 14 during the time period between August 1, 2005 and July 31, 2008. (Counts 1-6; § 288, subd. (a).) The prosecutor told the jury that counts 1 and 2 occurred when Monica was eight years old and in third grade (in 2005), that counts 3 and 4 occurred when Monica was nine years old and in fourth grade (in 2006) , and that counts 5 and 6 occurred when Monica was 10 years old and in fifth grade (in 2007). The jury was unable to reach a verdict as to counts 1 through 3 but found defendant guilty of counts 4 through 6.

Defendant was charged with five counts of aggravated sexual assault of a child under the age of 14 and seven or more years younger than the defendant. (Counts 7, 8, 11, 12, & 15; § 269.) Rape (§ 261, subd. (a)) was alleged as the underlying crime in all five counts. Counts 7, 8, 11, and 12 were alleged to have occurred between August 1, 2008 and December 31, 2010, while count 15 was alleged to have occurred between September 9, 2010 and December 31, 2010. The prosecutor specified that counts 7 and 8 occurred when Monica was in sixth grade (in 2008 or 2009), that counts 11 and 12 occurred when Monica was in seventh grade (in 2009 or 2010), and that count 15 related

7

to the incident that occurred in December of 2010. The jury was unable to reach a verdict as to counts 7 and 8 but found defendant guilty of counts 11, 12, and 15.

Defendant was charged with five counts of committing a forcible lewd or lascivious act on a child under the age of 14. (Counts 9, 10, 13, 14, & 16; § 288, subd. (b)(1).) Counts 9, 10, and 13 were alleged to have occurred between August 1, 2008 and December 31, 2010. Count 14 was alleged to have occurred between August 1, 2008 and September 8, 2010. Count 16 was alleged to have occurred between September 9, 2010 and December 31, 2010. The prosecutor stated that counts 9 and 10 occurred when Monica was in sixth grade (in 2008 or 2009), that counts 13 and 14 occurred when Monica was in seventh grade (in 2009 or 2010), and that count 16 occurred "that last time" that Monica described, "December of 2010." The jury found defendant guilty of all five counts.

Finally, defendant was charged with committing a lewd or lascivious act on a child aged 14 or 15 on January 16, 2011—the day that Maria saw defendant in the bedroom with Monica. (Count 17; § 288, subd. (c)(1).) The jury found defendant not guilty of that count, but it found him guilty of attempting to commit a lewd act (§§ 664/288, subd. (c)(1)).

## G.    *Sentencing*

The trial court imposed an aggregate indeterminate sentence of 45 years to life, consecutive to an aggregate determinate term of 38 years. The determinate sentence included a six year term for count 4, a consecutive eight year term for count 16, and four consecutive six year terms for counts 9, 10, 13, and 14. The indeterminate sentence was comprised of consecutive terms of 15 years to life for counts 11, 12, and 15. Concurrent terms were imposed for counts 5, 6, and 17.

The fines and fees imposed at sentencing included an AIDS education fee plus penalty assessments. (See § 1463.23.)

8

### III.    DISCUSSION

**A.    *Counts 9 Through 16:  Evidence of Force, Fear, or Duress (§§ 269, 288, subd. (b)(1))***

Defendant contends that counts 9 through 16—in which he was convicted of five counts of committing a forcible lewd or lascivious act on a child under the age of 14 (§ 288, subd. (b)(1)) and three counts of aggravated sexual assault of a child (§ 269)—must be reversed because there was no substantial evidence he accomplished any of the acts by means of force, fear, or duress.

We evaluate defendant's contention under a well-established standard of review:  "In considering a challenge to the sufficiency of the evidence . . . we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value— from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence.  [Citation.]  If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.  [Citation.]  'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.'  [Citation.]" (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60 (*Albillar*).)

#### 1.    Proceedings Below

Defendant was charged with five counts of committing a forcible lewd or lascivious act on a child under the age of 14 (counts 9, 10, 13, 14, & 16; § 288, subd. (b)(1)) and five counts of aggravated sexual assault of a child under the age of 14 and seven or more years younger than the defendant (counts 7, 8, 11, 12, & 15; § 269).  Counts 7 through 13 were alleged to have occurred between August 1, 2008 and December 31, 2010.  Count 14 was alleged to have occurred between August 1, 2008

9

and September 8, 2010. Counts 15 and 16 were alleged to have occurred between September 9, 2010 and December 31, 2010.

The trial court instructed the jury that in order to convict defendant of committing a forcible lewd or lascivious act on a child under age 14 in violation of section 288, subdivision (b)(1), it had to find that "[i]n committing the act, the defendant used force, violence, duress, menace or fear of immediate and unlawful bodily injury to the child or someone else." (See CALCRIM No. 1111.) The trial court further specified that "[t]he force used must be substantially different from or substantially greater than the force needed to accomplish the act itself." (See *ibid*.)

The trial court instructed the jury that in order to convict defendant of committing aggravated sexual assault of a child in violation of section 269, it had to find that defendant "committed rape." (See CALCRIM No. 1123) The trial court further specified that in order to find that defendant committed rape, it had to find that he "accomplished the intercourse by force, violence, duress, menace or fear of immediate and unlawful bodily injury." (See CALCRIM No. 1000.) The trial court also explained, "Intercourse is accomplished by force if a person uses enough force to overcome the woman's will." (See *ibid.*)

The trial court instructed the jury that if it found defendant not guilty of forcible lewd or lascivious acts on a child under the age of 14 (§ 288, subd. (b)(1)), it could convict defendant of five lesser included offenses: attempted forcible lewd or lascivious acts on a child under age 14 (§§ 664/288, subd. (b)(1)); non-forcible lewd or lascivious acts on a child under age 14 (§ 288, subd. (a)); attempted non-forcible lewd or lascivious act on a child under age 14 (§§ 664/288, subd. (a)); simple battery (§§ 242, 243, subd. (a)); and simple assault (§§ 240, 241, subd. (a)).

The trial court instructed the jury that if it found defendant not guilty of aggravated sexual assault of a child (§ 269), it could find defendant guilty of two lesser included offenses: rape (§ 261) and simple assault (§§ 240, 241, subd. (a)).

10

The jury found defendant guilty of all five forcible lewd act counts. As to the sexual assault counts, the jury found defendant guilty of three counts but could not reach a verdict as to the other two counts.

### 2. Counts 9, 10, 13, 14, and 16—Forcible Lewd or Lascivious Acts (§ 288, subd. (b)(1))

Defendant contends there is no substantial evidence that he used force, fear, or duress to accomplish the forcible lewd acts charged in counts 9, 10, 13, 14, and 16.[2] Reviewing the entire record in the light most favorable to the judgment and presuming in support of the judgment every fact the jury could have reasonably deduced from the evidence, we find substantial evidence that defendant used force to accomplish the lewd acts. Thus, we need not address whether the record contains substantial evidence that defendant accomplished the lewd acts by means of fear or duress.

The force used for a subdivision (b) conviction must be " 'substantially different from or substantially greater than that necessary to accomplish the lewd act itself.' [Citation.]" (*People v. Soto* (2011) 51 Cal.4th 229, 242 (*Soto*).) "[T]his includes acts of grabbing, holding and restraining that occur in conjunction with the lewd acts themselves. [Citations.]" (*People v. Alvarez* (2009) 178 Cal.App.4th 999, 1005.) For instance, in *People v. Bolander* (1994) 23 Cal.App.4th 155 (*Bolander*), disapproved on other grounds by *Soto, supra,* 51 Cal.4th at page 248, footnote 12, this court held that the defendant's acts of "inhibiting [the victim] from pulling his shorts back up, bending [the victim] over, and pulling [the victim] towards him constitute force within the meaning of subdivision (b)" of section 288. (*Bolander, supra,* at p. 159.)

Here, Monica testified that defendant touched her every two to three days after they moved to the second apartment (in late 2007 or early 2008) and that defendant had

---

[2] As explained in part III-D, *post*, we find insufficient evidence to support count 16. We will therefore limit our discussion to counts 9, 10, 13, and 14.

sexual intercourse with her once or twice per week beginning in 2010 but possibly in 2009. He would "[s]ometimes" stop touching her when she told him to stop or pushed him away. Likewise, defendant would "sometimes" stop when she pulled her pants back up after defendant had pulled them down. Her testimony thus established that defendant sometimes would *not* stop molesting her when she tried to resist. Defendant's acts were analogous to those this court found to constitute force in *Bolander, supra,* 23 Cal.App.4th 155, where the defendant pulled the victim toward him, prevented the victim from pulling his shorts back up, and bent the victim over. The force that Monica described was " 'substantially different from or substantially greater than that necessary to accomplish the lewd act itself.' [Citation.]" (*Soto, supra,* 51 Cal.4th at p. 242.) Although Monica was not specific about the means by which defendant accomplished the lewd acts on any particular occasion, the jury could reasonably infer that defendant used physical force to overcome her resistance to accomplish the lewd acts. (See gen., *People v. Jones* (1990) 51 Cal.3d 294, 314-316 [approving use of generic testimony in child molestation cases].) In sum, Monica's generic testimony about defendant's use of force to commit multiple lewd acts was sufficient to support the jury's determination that defendant violated section 288, subdivision (b)(1) as charged in counts 9, 10, 13, and 14. (See fn. 2, *ante*.)

### 3. Counts 11, 12, and 15—Aggravated Sexual Assault of a Child (§ 269)

Defendant contends there was no substantial evidence that he used force, fear, or duress in committing the aggravated sexual assaults (i.e., the rapes). Again, after reviewing the entire record in the light most favorable to the judgment and presuming in support of the judgment every fact the jury could have reasonably deduced from the evidence, we find substantial evidence that defendant used force to accomplish the sexual intercourse that was the basis for the three sexual assaults. Thus, we need not address whether the record contains substantial evidence to support a finding that defendant accomplished the sexual intercourse by means of fear or duress.

12

"[F]orcible rape under section 261, subdivision (a)(2) is sexual intercourse accomplished against the victim's will by force or other listed coercive means. [Citations.]" (*In re Asencio* (2008) 166 Cal.App.4th 1195, 1205 (*Asencio*).) Force "is proven when a jury finds beyond a reasonable doubt that the defendant accomplished an act of sexual [intercourse] by the use of force sufficient to overcome the victim's will." (*Ibid.*) In a rape case, the "question for the jury" is "simply whether [the] defendant used force to accomplish intercourse with [the victim] against her will, not whether the force he used overcame [the victim's] physical strength or ability to resist him." (*People v. Griffin* (2004) 33 Cal.4th 1015, 1028.)

Here, Monica testified that she would wrap a blanket around herself when she slept next to defendant. Defendant would try to uncover her and turn her. She would try to turn away when defendant tried to have sexual intercourse with her, and he would only sometimes stop. Monica further testified that defendant held her arm "hard" when they had sex, that defendant would "grab" her before he put his penis into her vagina, and that on one occasion she tried to get away from defendant by going to the bathroom, but defendant "wouldn't let [her] stop him." And, as noted above, defendant would only sometimes stop when she pulled her pants up after defendant had pulled them down. This testimony, viewed together with Monica's generic testimony about the frequency of the sexual intercourse, provided substantial evidence to support the jury's determination that defendant used "force sufficient to overcome [her] will" in accomplishing the sexual intercourse and thus to support the jury's verdicts on the three sexual assaults charged in counts 11, 12, and 15. (See *Asencio, supra,* 166 Cal.App.4th at p. 1205.)

In his reply brief, defendant contends that Monica never testified that any of the forcible acts occurred "in connection with the commission of counts 11, 12 or 15." First, defendant notes that count 15 was based on the last time defendant engaged in sexual intercourse with Monica, and that Monica did not specifically state that defendant used force on that occasion. Second, defendant notes that the prosecutor suggested counts 11

13

and 12 could be based on acts that defendant admitted committing, and that defendant did not describe using any force.[3]  However, Monica testified that she would wrap a blanket around herself when she slept next to defendant, that defendant would try to uncover her and turn her, and that she would try to turn away.  She also testified that he would hold her arm "hard" when they had sex.  As Monica did not distinguish among the acts of sexual intercourse when she provided this generic testimony, the jury could reasonably infer that defendant used such force on the last occasion as well as during the sexual intercourse that defendant admitted committing.

**B.**     ***Counts 11, 12, and 15:  Aggravated Sexual Assault of a Child/Consent***

Defendant contends that counts 11, 12, and 15 (aggravated sexual assault of a child; § 269) must be reversed because the prosecution failed to prove, beyond a reasonable doubt, that defendant did not actually and reasonably believe Monica consented to intercourse.  Alternatively, he contends these three counts must be reversed because the trial court did not instruct the jury on the definition of consent.

**1.     Proceedings Below**

The trial court instructed the jury on rape pursuant to CALCRIM No. 1000.  The trial court instructed the jury that to prove defendant was guilty of rape, the People were required to prove that defendant had sexual intercourse with a woman who was not his wife and that the woman "did not consent to the intercourse."  The trial court also instructed the jury, "To consent, a woman must act freely and voluntarily and know the nature of the act."  Further, the trial court instructed, "The defendant is not guilty of rape if he actually and reasonably believed that the woman consented to the intercourse.  [¶] The People have the burden of proving beyond a reasonable doubt that the defendant did

---

[3] After stating that count 15 was based on Monica's testimony about the December of 2010 incident, the prosecutor stated, "The time the defendant also admits to.  The two times that [defendant] also admits to in Counts 11 and 12, the two times he admits to even before then."

not actually and reasonably believe that the woman consented. If the People have not met this burden, you must find the defendant not guilty."

### 2. Sufficiency of the Evidence

Defendant first argues the prosecution failed to prove that he did not actually and reasonably believe that Monica consented to the sexual intercourse. (See CALCRIM No. 1000; *People v. Mayberry* (1975) 15 Cal.3d 143, 155 [a defendant is not guilty of rape if he or she "entertains a reasonable and bona fide belief" that the woman engaged in sexual intercourse consensually].)

Defendant claims the evidence supported a finding that he *did* actually and reasonably believe that Monica consented to the sexual intercourse. Defendant reiterates his argument that there was no evidence he used any force, fear or duress to accomplish the sexual intercourse. Defendant also asserts that Monica never told him to stop during intercourse, that she testified she could stop him, and that there was evidence she was affectionate with him. Defendant also points out that the statements he made during this police interview were consistent with an actual belief of consent.

Under the well-established substantial evidence standard of appellate review, we may not reverse the judgment "simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Albillar, supra,* 51 Cal.4th at p. 60.) Here, Monica testified that she would tell defendant that she "didn't want him to be doing that" or to "stop doing that," and that in order to prevent the molestations, she would wrap herself up in a blanket, turn away, push defendant away, or pull her pants back up. Monica was a young girl—between 11 and 13 years old—and defendant, an adult 29 years older than Monica, was her mother's boyfriend. Even if defendant held an actual, subjective belief that Monica consented, on this record the jury could find that defendant's belief was not reasonable. (See *People v. Williams* (1992) 4 Cal.4th 354, 361 [a defendant's mistake regarding consent must be "formed under circumstances society will tolerate as reasonable"].) Based on this evidence, a reasonable jury could find,

beyond a reasonable doubt, that defendant did not actually and reasonably believe that Monica was consenting to the intercourse.

### 3. Consent Instruction

Defendant contends the trial court erred by failing to define consent in the jury instructions. He claims the jury should have been instructed in the language of section 261.6, which provides: "In prosecutions under Section 261, 262, 286, 288a, or 289, in which consent is at issue, 'consent' shall be defined to mean positive cooperation in act or attitude pursuant to an exercise of free will. The person must act freely and voluntarily and have knowledge of the nature of the act or transaction involved."

As noted above, the trial court did instruct the jury, pursuant to CALCRIM No. 1000, in language reflecting the last sentence of section 261.6: "To consent, a woman must act freely and voluntarily and know the nature of the act." Thus, defendant's argument focuses on the absence of an instruction incorporating the portion of section 261.6 that defines " 'consent' " as "positive cooperation in act or attitude pursuant to an exercise of free will."

Defendant points out that in *People v. Lee* (2011) 51 Cal.4th 620 (*Lee*), the California Supreme Court stated that an instruction tracking the language of section 261.6 "correctly expressed the law." (*Id.* at p. 638.) However, *Lee* did not address, and thus did not hold, that in all prosecutions for forcible rape a trial court must instruct the jury that " 'consent' " means "positive cooperation in act or attitude pursuant to an exercise of free will." (See § 261.6.) Here, the rape instruction given did define consent, although it did not fully track the language of section 261.6. "A trial court has no sua sponte duty to revise or improve upon an accurate statement of law without a request from counsel [citation], and failure to request clarification of an otherwise correct instruction forfeits the claim of error for purposes of appeal. [Citations.]" (*Lee, supra,* at p. 638.)

Even assuming the trial court was required to instruct the jury that " 'consent' " is defined as "positive cooperation in act or attitude pursuant to an exercise of free will,"

16

any error was harmless beyond a reasonable doubt.  (§ 261.6; see *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*); *People v. Martinez* (2010) 47 Cal.4th 911, 955 (*Martinez*) [applying *Chapman* standard to trial court's failure to supply a definition of consent].)

First, the jury was instructed that "[t]o consent, a woman must act freely and voluntarily and know the nature of the act."  An instruction informing the jury that a woman must cooperate in the sexual intercourse "pursuant to an exercise of free will" (§ 261.6) would have added little to the instruction given.  (See *Martinez, supra,* 47 Cal.4th at p. 955 [failure to supply a definition of consent harmless where the rape instruction stated "that the acts against the victim must occur 'against that person's will' " and defined that phrase as " 'without the consent of the alleged victim' "].)

Most significantly, the evidence clearly established that Monica did not consent to the sexual intercourse and that defendant did not reasonably or actually believe that Monica consented to the sexual intercourse.  Monica testified that she expressly told defendant that she "didn't want him to be doing that" or to "stop doing that," but that he "wouldn't listen" to her.  She testified that defendant would "grab" her before he put his penis into her vagina.  She also testified that in order to prevent defendant from molesting her at night, she would wrap herself up in a blanket.  She would also try to prevent him from molesting her by turning away, pushing him away, or pulling her pants back up.  Monica was between 11 and 13 years old, and defendant was 29 years older than her.  Defendant's statement to the police, in which he described Monica as being curious about sexual intercourse and initiating intercourse with him at age 11, while they slept in a bedroom with other family members, was not credible.  Moreover, defendant's claim that Monica had willingly engaged in the sexual intercourse was preceded by an officer's suggestion that Monica "wanted it."  On this record, no reasonable jury would have found that Monica "positive[ly] cooperat[ed]" in the sexual intercourse "pursuant to an exercise of free will" (see § 261.6) or that defendant actually and reasonably believed that she did.

17

Defendant points out that the jury failed to convict him of two counts of aggravated sexual assault of a child (counts 7 and 8) as well as three counts of non-forcible lewd acts (counts 1 through 3). Defendant claims the jury's failure to reach a verdict as to some counts "supports a reversal" by demonstrating that the case was close. However, some jurors may simply have had a reasonable doubt about when the intercourse and molestations began. The jury failed to reach a verdict on counts 7 and 8 after the prosecutor stated that those counts were based on sexual intercourse that occurred when Monica was in sixth grade, but the jury convicted defendant of counts 11, 12, and 15, which the prosecutor said were based on acts of sexual intercourse that occurred when Monica was in seventh and eighth grades.[4] Similarly, the jury failed to reach a verdict on counts 1 through 3 after the prosecutor stated that those counts were based on lewd acts that occurred when Monica was in third and fourth grade, but the jury convicted defendant of counts 4 through 6, which the prosecutor said were based on lewd acts that occurred when Monica was in fourth and fifth grade. Thus, the jury's mixed verdicts do not necessarily demonstrate a weakness in the evidence related to consent or defendant's belief regarding consent.

We likewise reject defendant's claim that the length of the jury's deliberations or its questions and requests for readback demonstrate that the case was close regarding whether Monica consented or whether defendant actually and reasonably believed that Monica consented. First, the jury's deliberations were not particularly lengthy. This was a 12-day jury trial, with evidence presented from day 4 through day 9, with 17 charges and numerous lesser offenses to be considered. Further, the time that the jury spent going over the instructions and listening to readback "should not be included in the time calculated for deliberation." (*People v. Walker* (1995) 31 Cal.App.4th 432, 438.)

---

[4] Monica would have been in sixth grade in 2008 or 2009. She testified that defendant began having intercourse with her in 2010 and could not recall if they had sexual intercourse in 2009.

Second, there is no indication that the jury's questions and readback requests were related to the issues concerning consent. The jury's notes reflect that the jury caught a typographical error in an instruction, requested additional definitions of force, menace, fear and duress, requested Maria's testimony on direct regarding the frequency of molestation after moving apartments, asked for clarification of the process of considering lesser offenses, and asked for readback of testimony about defendant's interview. Under the circumstances, neither the length of the deliberations nor the number of jury notes indicates the jury had any difficulty in reaching a decision as to issues concerning consent or defendant's belief in consent.

In sum, any error in failing to instruct the jury, pursuant to section 261.6, that " 'consent' " is defined as "positive cooperation in act or attitude pursuant to an exercise of free will" was harmless beyond a reasonable doubt. (See *Chapman, supra,* 386 U.S. at p. 24.)

## C. Counts 11, 12, and 15: Failure to Instruct on Lesser-Included Offense

Defendant contends that counts 11, 12, and 15 (aggravated sexual assault of a child; § 269) must be reversed because the trial court failed to instruct the jury on the lesser-included offense of unlawful sexual intercourse with a minor.[5] (See § 261.5, subd. (a) ["Unlawful sexual intercourse is an act of sexual intercourse accomplished with a person who is not the spouse of the perpetrator, if the person is a minor."].) He claims the evidence "raised a question as to whether the charged forcible rapes were committed by force, violence and duress."

A trial court has a "duty to instruct on 'all theories of a lesser included offense which find substantial support in the evidence.' " (*People v. Rogers* (2006) 39 Cal.4th 826, 866-867 (*Rogers*).) "Substantial evidence" is evidence from which a jury composed

---

[5] As noted *ante*, the trial court did instruct the jury on two included offenses as to the aggravated sexual assault counts: rape (§ 261) and simple assault (§§ 240, 241, subd. (a)).

of reasonable persons could conclude that the defendant committed the lesser offense, but not the greater. (*People v. Breverman* (1998) 19 Cal.4th 142, 162 (*Breverman*).) "In deciding whether evidence is 'substantial' in this context, a court determines only its bare legal sufficiency, not its weight." (*Id.* at p. 177.) However, the " 'substantial evidence requirement is not satisfied by " '*any* evidence . . . no matter how weak,' " but rather by evidence from which a jury composed of reasonable persons could conclude "that the lesser offense, but not the greater, was committed." [Citation.]' " (*People v. Verdugo* (2010) 50 Cal.4th 263, 293.)

When a trial court fails to instruct the jury sua sponte on a lesser included offense, reversal is not required "unless an examination of the entire record establishes a reasonable probability that the error affected the outcome. [Citations.]" (*Breverman, supra,* 19 Cal.4th at p. 165; see *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).)

We will assume that unlawful sexual intercourse with a minor is a lesser included offense of aggravated sexual assault of a child here under the accusatory pleading test. (See *People v. Montoya* (2004) 33 Cal.4th 1031, 1036.) We will also assume that there was substantial evidence supporting an instruction on that offense.

This was not a close case with respect to defendant's use of force to accomplish the sexual intercourse. Monica testified that in order to prevent defendant from molesting her at night, she would wrap herself up in a blanket, but defendant would unwrap her. She would also try to prevent him from engaging in sexual intercourse with her by turning away, pushing him away, or pulling her pants back up. Defendant would only sometimes stop. Thus, the evidence established that on the occasions when defendant did not stop, he used force to overcome Monica's will. The only evidence suggesting that Monica willingly engaged in the sexual intercourse came from defendant's statement to the police, in which defendant asserted that Monica began initiating sex with him when she was 11 years old, while they were sleeping on the floor with other family members in the bedroom. No reasonable jury could find defendant's statement credible. On this

record, there is no reasonable probability the jury would have reached a different result had it been given an instruction on unlawful sexual intercourse with a minor. (*Breverman, supra,* 19 Cal.4th at p. 165; see *Watson, supra,* 46 Cal.2d at p. 836.)

Contrary to defendant's argument, nothing in the record demonstrates the jury believed the evidence was close regarding force. As explained above, the jury's failure to convict defendant of two counts of aggravated sexual assault of a child (counts 7 and 8) and three counts of non-forcible lewd acts (counts 1 through 3) suggests only that some jurors may have had a reasonable doubt about when the intercourse and molestations began. The mixed verdicts do not demonstrate a weakness in the evidence related to force. Likewise, no prejudice is established by the length of the jury's deliberations or the jury's questions and requests for readback. Although the jury did ask a question related to the process of considering lesser offenses, there is no indication that the jury was concerned about having the option of convicting defendant of a nonforcible lesser offense to the aggravated sexual assault counts.

We conclude that even if the trial court erred by failing to instruct the jury sua sponte on unlawful sexual intercourse with a minor as a lesser included offense of aggravated sexual assault of a child, reversal is not required because our "examination of the entire record establishes [no] reasonable probability that the error affected the outcome. [Citations.]" (*Breverman, supra,* 19 Cal.4th at p. 165; see *Watson, supra,* 46 Cal.2d at p. 836.)

## D.     *Count 16:  Insufficient Evidence of Lewd or Lascivious Act*

Defendant contends count 16 (forcible lewd or lascivious act on a child under the age of 14; § 288, subd. (b)(1)) must be reversed because there is no evidence he committed any lewd and lascivious act on the victim during the incident that occurred in December of 2010.

As noted above, count 16 was alleged to have occurred between September 9, 2010 and December 31, 2010. During argument to the jury, the prosecutor stated that

21

count 16 occurred "that last time" that Monica and defendant engaged in sexual intercourse, in "December of 2010."

Defendant contends that the evidence at trial did not establish that defendant committed a forcible lewd act on the last occasion that he engaged in sexual intercourse with Monica. Defendant also contends there was no evidence that he typically committed a forcible lewd act when he engaged in sexual intercourse with Monica, such that the jury could infer that he committed a forcible lewd act when he had sexual intercourse with Monica for the last time, in December of 2010.

At trial, the prosecutor asked Monica whether defendant would touch her before he put his penis into her vagina. Monica responded, "Yeah." The prosecutor asked, "Where did he touch you?" Monica replied, "He would grab me from my – from my back over here or – yeah, that's what I remember." Thus, Monica did not testify that defendant typically committed a lewd touching before he had sexual intercourse with her.

Regarding the specific incident that occurred around December of 2010, Monica told an officer that defendant had begun touching her while she was sleeping. Monica did not specify where defendant had touched her, however.

The Attorney General does not argue there is any evidence defendant committed a forcible lewd act during the specific incident that Monica described, nor does the Attorney General contend there is any evidence that defendant typically committed a forcible lewd act when he had sexual intercourse with Monica. Instead, the Attorney General argues the jury may have convicted defendant of count 16 based on Monica's generic testimony about defendant's forcible lewd acts during the charged time period of September 9, 2010 and December 31, 2010, rather than her specific testimony about the December 2010 incident.

Defendant argues that the Attorney General's argument is foreclosed by the prosecutor's election of the December 2010 incident as the basis for count 16. We agree.

22

The prosecutor told the jury that count 16 was "that last time that she described to you, December of 2010."[6]

We also agree with defendant that there is insufficient evidence defendant committed a forcible lewd act when he had sexual intercourse with Monica for the last time in December of 2010, and that there is insufficient evidence defendant typically committed a forcible lewd act when he had sexual intercourse with Monica. Because Monica did testify that defendant touched her before having sexual intercourse with her on the last occasion, however, we find it appropriate to reduce count 16 to a misdemeanor battery—a lesser-included offense on which the jury was instructed. (§§ 242, 243, subd. (a)); see *People v. Bailey* (2012) 54 Cal.4th 740, 748 [under sections 1181, subdivision 6, and 1260, " 'an appellate court that finds that insufficient evidence supports the conviction for a greater offense may, in lieu of granting a new trial, modify the judgment of conviction to reflect a conviction for a lesser included offense' "].)

## E. *Deliberation Instruction*

Defendant contends counts 9, 10, 13, 14, and 16 (the forcible lewd act convictions; § 288, subd. (b)(1)) must be reversed because the trial court told the jury that it could not consider lesser offenses if it could not agree on the greater charges.

---

[6] Although the prosecutor's closing argument did not necessarily preclude the jury from finding defendant guilty of count 16 based on a forcible lewd act committed on another date within the charged time period, the prosecutor did provide the jury with discrete time periods for each of the charges, and the jury appears to have followed the prosecutor's suggestions. For instance, the aggravated sexual assaults charged in counts 7 and 8 were alleged to have occurred between August 1, 2008 and December 31, 2010. The jury failed to convict defendant of those counts after the prosecutor stated that those counts occurred when Monica was in sixth grade, which would have been in 2008 or 2009, whereas Monica testified that defendant began having sexual intercourse with her in 2010 and could not recall if they had sexual intercourse in 2009.

23

### 1.    Proceedings Below

During deliberations, the jury submitted a note that read: "Clarification on considering lesser charges = if we do not agree on greater charges, can we consider lesser charges?"

The trial court's written response stated: "No, if you cannot agree on greater charges you may not go onto [*sic*] consider lesser charges, please refer to CALCRIM 3517 in that regard."

As given, CALCRIM No. 3517 informed the jury: "If all of you find that the defendant is not guilty of a greater charged crime . . . , you may find him guilty of a lesser crime if you are convinced beyond a reasonable doubt that the defendant is guilty of that lesser crime." That instruction further informed the jury: "It is up to you to decide the order in which you consider each crime and the relevant evidence, but . . . I can accept a verdict of guilty of a lesser crime only if you have found the defendant not guilty of the corresponding greater crime." Additionally, that instruction specified how the jury was to fill out the verdict forms: (1) if the jurors agreed that defendant was guilty of a greater crime, they were to fill out that verdict form only; (2) if the jurors could not agree whether defendant was guilty of a greater crime, they were to inform the trial court and write nothing on the verdict form; (3) if the jurors agreed that defendant was not guilty of the greater crime and agreed that defendant was guilty of a lesser crime, they were to write "not guilty" on the verdict form for the greater crime and "guilty" on the verdict form for the lesser crime; (4) if the jurors agreed that defendant was not guilty of both the greater crime and the lesser crime, they were to write "not guilty" on both verdict forms; and (5) if the jurors agreed that defendant was not guilty of the greater crime but could not agree on a verdict for the lesser crime, they were to write "not guilty" on the verdict form for the greater crime but write nothing on the verdict form for the lesser crime.

24

### 2. Analysis

Below, defendant did not object nor request the trial court answer the jury's question differently. He contends that this court may still consider the issue because it affected his substantial rights. (See § 1259.) The Attorney General does not argue that this claim was forfeited. Thus, we will proceed to consider the merits of defendant's claim.

Defendant relies on *People v. Kurtzman* (1988) 46 Cal.3d 322 (*Kurtzman*), where the jury asked, " 'Can we find the defendant guilty of manslaughter without unanimously finding him not guilty of murder in the second degree?' " (*Id.* at p. 328.) The trial court responded, " 'No, you must unanimously agree on the second degree murder offense before *considering* voluntary manslaughter.' " (*Ibid*.) The California Supreme Court held that the trial court erred by giving that response. A jury "may consider charges in any order it wishes to facilitate ultimate agreement on a conviction or acquittal," even though "it may not return a verdict on lesser offenses unless it has unanimously agreed on a disposition of the greater." (*Id.* at p. 332.) Under this rule, "a trial court should not tell the jury it must first unanimously acquit the defendant of the greater offense before deliberating on or even considering a lesser offense. [Citation.]" (*People v. Dennis* (1998) 17 Cal.4th 468, 536.)

Here, even if the trial court erred under *Kurtzman*, the error was harmless. Defendant acknowledges that in *Kurtzman* , the California Supreme Court applied the *Watson* standard for harmless error, but he nevertheless urges this court to apply the *Chapman* standard. We decline to do so. As an intermediate court, we are bound to apply the law as interpreted by our Supreme Court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Defendant argues that it is reasonably probable that the jury would have convicted him of nonforcible lewd acts rather than the charged forcible lewd acts in counts 9, 10, 13, 14, and 16 if the trial court had not instructed the jury it could not "consider" lesser

25

offenses if it disagreed on the greater offenses. However, since the jury failed to reach verdicts as to counts 1 through 3 (nonforcible lewd acts) and counts 7 and 8 (aggravated sexual assault), the record indicates that the jury's disagreement concerned those counts, not the forcible lewd act charges. Had the jury's disagreement concerned the forcible lewd act charges, the jury would have informed the trial court that it could not reach a verdict as to those counts, as required by the trial court's response and as it did for counts 1 through 3 and counts 7 and 8. Instead, the jury reached unanimous verdicts as to all of the forcible lewd or lascivious act counts. Moreover, in its response, the trial referred the jury back to CALCRIM 3517, which stated that the jury could decide the order in which it considered each crime. On this record, it is not reasonably probable that the jury was misled by the trial court's response such that absent the error a different result would have occurred. (See *Watson, supra,* 46 Cal.2d at p. 836.)

## F. Cumulative Error

Defendant contends that the cumulative effect of the alleged instructional errors requires reversal. (See *People v. Hill* (1998) 17 Cal.4th 800, 844 ["a series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error"].)

Two of the claimed instructional errors related to defendant's three convictions of aggravated sexual assault of a minor. We assumed that the trial court erred by failing to fully instruct the jury on the definition of consent contained in section 261.6 and that the trial court should have instructed the jury on unlawful sexual intercourse with a minor as a lesser included offense. We found each error harmless because the evidence overwhelmingly established that Monica did not consent to the sexual intercourse and that defendant did not reasonably or actually believe that Monica consented to the sexual intercourse. Even considered together, these errors were harmless as to defendant's convictions of aggravated sexual assault of a minor for the same reason.

26

The other claimed instructional error related to defendant's five convictions of forcible lewd acts on a child under the age of 14. As this claimed error was unrelated to the other claimed errors, it cannot have any cumulative effect. (See *Rogers, supra,* 39 Cal.4th at p. 890 [no cumulative prejudice where errors were "independent"].)

## G. *Count 16: Sentencing*

Defendant contends the trial court erred by imposing a full-term consecutive sentence on count 16, in which he was convicted of forcible lewd or lascivious acts with a minor under the age of 14. Defendant argues that the trial court erroneously found that full-term consecutive sentences were mandatory pursuant to section 667.6, subdivision (d), which requires a "full, separate, and consecutive term" for certain sex offenses "if the crimes involve separate victims or involve the same victim on separate occasions."

We have determined that defendant's conviction of count 16 must be reduced to misdemeanor battery. We therefore need not reach defendant's argument concerning section 667.6, subdivision (d). Rather than remand this matter for resentencing on count 16, we determine that section 654 requires the term for that count be stayed.

Subdivision (a) of section 654 provides that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ." The purpose of the statute is to ensure that the punishment is commensurate with the defendant's culpability. (*People v. Perez* (1979) 23 Cal.3d 545, 550-551.) "The proscription against double punishment in section 654 is applicable where there is a course of conduct which violates more than one statute and comprises an indivisible transaction punishable under more than one statute within the meaning of section 654. The divisibility of a course of conduct depends upon the intent and objective of the actor, and if all the offenses are

27

incident to one objective, the defendant may be punished for any one of them but not for more than one. [Citations.]" (*People v. Bauer* (1969) 1 Cal.3d 368, 376.)

Here, Monica testified that defendant touched her before having sexual intercourse with her in December of 2010. The evidence provides a reasonable inference that defendant committed that touching with the same intent and objective as he had in committing the aggravated sexual assault. Therefore, the term for the battery must be stayed.

## H.     *AIDS Education Fine*

Defendant contends, and the Attorney General concedes, that the AIDS education fee and associated penalty assessments must be stricken. As defendant points out, he was not convicted of any offense for which the fee is authorized. (See § 1463.23.[7])

---

[7] Section 1463.23 provides: "Notwithstanding Section 1463, out of the moneys deposited with the county treasurer pursuant to Section 1463, fifty dollars ($50) of each fine imposed pursuant to Section 4338 of the Business and Professions Code; subdivision (c) of Section 11350, subdivision (c) of Section 11377, or subdivision (d) of Section 11550 of the Health and Safety Code; or subdivision (b) of Section 264, subdivision (m) of Section 286, subdivision (m) of Section 288a, or Section 647.1 of this code, shall be deposited in a special account in the county treasury which shall be used exclusively to pay for the reasonable costs of establishing and providing for the county, or any city within the county, an AIDS (acquired immune deficiency syndrome) education program under the direction of the county health department, in accordance with Chapter 2.71 (commencing with Section 1001.10) of Title 6, and for the costs of collecting and administering funds received for purposes of this section."

28

## IV.   DISPOSITION

The judgment is modified as follows.  In count 16, defendant's conviction of committing a lewd or lascivious act on a child under the age of 14 (§ 288, subd. (b)(1)) is reduced to a conviction of misdemeanor battery (§§ 242, 243, subd. (a)).  The term for count 16 is stayed pursuant to section 654.  The AIDS education fee and associated penalty assessments are stricken.  As modified, the judgment is affirmed.


_____
BAMATTRE-MANOUKIAN, ACTING P.J.


WE CONCUR:


_____
MIHARA, J.


_____
GROVER, J.

29