[No. B207133. Second Dist., Div. Seven. Sept. 15, 2008.]

In re JOSE ROBERTO ASENCIO on Habeas Corpus.

**COUNSEL**

David H. Goodwin, under appointment by the Court of Appeal, for Petitioner Jose Roberto Asencio.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Victoria B. Wilson, Michael R. Johnsen and Jonathan J. Kline, Deputy Attorneys General, for Respondent State of California.

## OPINION

**ZELON, J.**—Petitioner Jose Roberto Asencio alleges that the evidence was insufficient to sustain his conviction for violating Penal Code[1] section 269, subdivision (a)(5); that there was insufficient evidence of more than one act of sexual penetration such that two of the counts on which he was convicted must be reversed; and that he received constitutionally ineffective assistance of counsel from trial counsel and former appellate counsel. We deny the petition.

### FACTUAL AND PROCEDURAL BACKGROUND

Kimberly G., Asencio's niece, was six years old in July 2005. Her home had a separate, partially converted garage in which Asencio, known to her as "Uncle Chato," lived. In August 2005, Kimberly G.'s mother took her to the doctor because she was having difficulty urinating. Medical tests revealed that Kimberly G. had gonorrhea.

Kimberly G. was interviewed by the police. The police officer who translated for Kimberly G. during the interview testified that when he first met Kimberly G., "she was happy and [had] no concern on her face." The officer testified that when he began to question her as to the reason she was there, "her face just dropped." When the officer asked why her vagina hurt, Kimberly G. became scared and began to cry.

Kimberly G. first told the police that her vagina could have been irritated by sand from a recent beach trip. When the officer asked if anyone had touched her vaginal area, Kimberly G. became quiet and cried again. After she had calmed down and had a snack, the officer asked his question again. The officer testified that Kimberly G. "finally whispered please [to] not tell anybody and that her Uncle Chato had touched her there."

The officer testified that Kimberly G. "told me that while they were watching a movie in the garage, she and her Uncle Chato were alone and that her Uncle Chato had touched her vagina and at first he had touched her with his finger." The officer asked if he had inserted his finger in her vagina, and she responded that it had not penetrated her vagina, it was just rubbing on the outside but underneath her underwear. Kimberly G. was intermittently crying as she related this information but was able to calm down and continue.

When the officer asked "if [Asencio] had put his penis in her or around her vagina," Kimberly G. began to cry and, as the officer described it, "she shut

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

down even further." She said she wanted to go home and that she didn't want to talk anymore. Eventually she said, " 'He didn't put that there. I want to go home.' " The interview concluded.

The police then interviewed Asencio, who admitted touching Kimberly G. "in an inappropriate way" while they were alone together on July 26, 2005. According to Asencio, Kimberly G. was jumping on him and they were tickling each other. Asencio directed her to leave the garage because he thought they should not be alone together. Asencio then related that after Kimberly G. left the garage, he had an erection and began masturbating. Asencio told the police that Kimberly returned to the garage, startling him; he rolled onto his side so that he would not expose his penis to her. According to Asencio, Kimberly G. began jumping on him and tickling him again.

The police officer who interviewed Asencio testified, "He then said he accident[al]ly pulled her panties down and while he was tickling her and that while he was erect and exposed, he had rolled over onto her while they were still tickling and playing around on the bed and had placed his penis on her vagina area." Asencio said that "he had touched himself and thinks that he might have transferred some of his fluids." Asencio admitted "that he touched her vagina area with his finger." The officer said that Asencio reported that "he rubbed the vagina and, and slightly penetrated, from what I believe, the vagina with the finger but didn't insert all the way." Asencio claimed that Kimberly G. was "purposely seducing him" by wearing loosely fitting shorts and skirts and then climbing on the bunk beds in the garage in such a manner that he could see up her clothes. According to Asencio, Kimberly was "coming onto" him by being around him and jumping on him. Asencio admitted that he had difficulty urinating and that he had green discharge when he urinated. His urine sample tested positive for gonorrhea.

Asencio was charged with two counts of aggravated sexual assault of a child (§ 269, subd. (a)) (counts 1 & 2) and two counts of a forcible lewd act on a child under the age of 14 years (§ 288, subd. (b)(1)) (counts 3 & 4). The information alleged as to each count that Asencio had inflicted great bodily injury under section 12022.8.

At trial, Kimberly G. (who was then seven years old) testified that she had told the police officer that her uncle had touched her "in a bad way" and that she had told the police the truth. She confirmed that she had told the police that Asencio had touched her underneath her pants while they were watching a movie. She was an extremely reluctant witness who refused to answer most questions, and she was not cross-examined. Asencio testified and categorically denied touching Kimberly G. or making any admissions to the police.

Asencio was convicted of one count of aggravated sexual assault and of both forcible lewd act charges (counts 1, 3 & 4); the jury acquitted him on count 2. The jury found the special allegation true as to each of the three counts on which Asencio was convicted. The trial court sentenced Asencio to an aggregate prison term of 28 years to life, consisting of an indeterminate prison term of 15 years to life on count 1, plus five years for the section 12022.8 enhancement; and a consecutive upper term of eight years for count 3. The sentence on count 4 and its accompanied enhancement were stayed pursuant to section 654 because both count 1 and count 4 arose from Asencio's digital penetration of Kimberly G.'s vagina.

Asencio appealed. His appellate counsel submitted a brief alleging that the evidence on the element of force was insufficient to support his convictions of committing a forcible lewd act upon a child under the age of 14 years (counts 3 & 4). We agreed with counsel's contention and reduced the convictions on counts 3 and 4 to the lesser included offense of violating section 288, subdivision (a). (*People v. Asencio* (Feb. 21, 2007, B189496) [nonpub. opn.].) We then remanded the matter to the trial court for resentencing.

At resentencing, the trial court reimposed the original sentence on count 1 (§ 269, subd. (a)(5)): 15 years to life, plus five years for the section 12022.8 enhancement. For count 3 (§ 288, subd. (a)(1)), the court imposed a consecutive term of two years (one-third the middle term of six years). The sentence on count 4 (§ 288, subd. (a)(1)) was again stayed pursuant to section 654. The aggregate prison sentence was 22 years to life.

Asencio again appealed.[2] Appellate counsel filed an opening brief in which she identified no meritorious issues on appeal. Asencio filed a supplemental brief in which he argued that the evidence of force was insufficient to support his aggravated sexual assault conviction on count 1 and that both trial and appellate counsel had rendered ineffective assistance. This court concluded that Asencio had raised potentially meritorious issues, relieved Asencio's attorney from her representation of Asencio, appointed Asencio new appellate counsel, and requested that the parties submit supplemental briefing. Specifically, this court requested that the parties address whether the evidence was sufficient to support the conviction on count 1 and whether former trial and appellate counsel rendered constitutionally ineffective assistance to Asencio.

New appellate counsel determined that the proper vehicle for raising the issues about which the court had requested briefing was a habeas corpus

---

[2] The appeal is *People v. Asencio* (Sept. 15, 2008, B201271) (nonpub. opn.), considered concurrently with the instant petition.

petition, and advised the court accordingly. After his petition was denied in the superior court, Asencio filed this habeas corpus petition. We issued an order to show cause.

## DISCUSSION

### I. *Sufficiency of the Evidence to Support the Conviction on Count 1*

 Decisional law makes clear that the definition of the word "force" in sexual offense statutes depends on the offense involved. To convict for committing a forcible lewd act against a child in violation of section 288, subdivision (b), the prosecution must prove that the defendant used physical force substantially different from or substantially greater than that necessary to accomplish the lewd act itself.[3] (*People v. Cicero* (1984) 157 Cal.App.3d 465, 474 [204 Cal.Rptr. 582] (*Cicero*).) In contrast, the requisite amount of force for a rape conviction is the amount sufficient to overcome the victim's will. (*People v. Griffin* (2004) 33 Cal.4th 1015, 1027 [16 Cal.Rptr.3d 891, 94 P.3d 1089] (*Griffin*).) This level of force also applies for convictions of aggravated sexual assault of a child by rape and by forcible oral copulation (§ 269, subd. (a)(1), (4)). (*People v. Guido* (2005) 125 Cal.App.4th 566, 574–576 [22 Cal.Rptr.3d 826] (*Guido*).)

 The question here is what amount of force is required to establish a violation of section 269, subdivision (a)(5): aggravated sexual assault of a child through sexual penetration as defined by section 289, subdivision (a). We conclude that under the reasoning articulated by the courts in *Cicero*, *Griffin*, and *Guido*, the amount of force necessary to commit this offense is that force which is sufficient to overcome the victim's will. As there is evidence from which a reasonable jury could have concluded that Asencio used force sufficient to overcome Kimberly G.'s will, we reject Asencio's argument that the evidence was insufficient to support his conviction.

### A. Cicero

The first relevant case is *Cicero, supra*, 157 Cal.App.3d 465, in which the court was called upon to consider whether the force required to commit a forcible lewd act on a child under section 288, subdivision (b) was simply the force used to perform the act or whether some force was needed beyond that necessary to commit the lewd act. The court's determination that some amount of force beyond the force necessary to accomplish the act was

---

[3] This was the basis for this court's reduction of the offenses in counts 3 and 4 from section 288, subdivision (b)(1) to section 288, subdivision (a). (*People v. Asencio, supra*, B189496).)

required was based on statutory analysis. The court began with the language and structure of section 288. At the time of the offenses in *Cicero*, section 288, subdivision (a) made it a criminal offense to " 'commit any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child.' "[4] (*Cicero*, at p. 472, fn. 5.) At all relevant times, section 288, subdivision (b) made it a separate felony to violate section 288, subdivision (a) " 'by use of force, violence, duress, menace, or threat of great bodily harm.' " (157 Cal.App.3d at p. 472, fn. 5.)[5]

The *Cicero* court noted this statutory distinction, observing that "Subdivisions (b) and (a) of section 288 on their face draw a distinction between those lewd acts that are committed by force and those that are not." (*Cicero, supra*, 157 Cal.App.3d at p. 473.) The court noted that by virtue of other statutes that apply when section 288, subdivision (b) is violated, "the violation of subdivision (b) is manifestly a more serious offense than the violation of subdivision (a)." (157 Cal.App.3d at p. 473.) Because the Legislature is not presumed to use statutory language in a manner that would render nugatory or redundant important provisions of a statute, the *Cicero* court concluded that "[s]ubdivision (b) must therefore proscribe conduct significantly different from that proscribed by subdivision (a)." (*Id.* at pp. 473–474.)

This conclusion led directly to the *Cicero* court's determination of what force was necessary for a violation of section 288, subdivision (b): "It necessarily follows that if commission of a lewd act itself constitutes the minimum proscribed conduct under subdivision (a), then in cases where 'force' is charged under subdivision (b), and the People pursue a theory that physical force was used on a child, and the child is not physically harmed, it is incumbent upon the People to prove that the defendant used physical force substantially different from or substantially greater than that necessary to accomplish the lewd act itself." (*Cicero, supra*, 157 Cal.App.3d at p. 474, fn. omitted.) In *Cicero*, that requisite evidence of force was supplied by evidence that the defendant had picked up his victims and carried them

---

[4] Now and at all times relevant to this matter, section 288, subdivision (a) has provided that it is a felony to commit "any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child." These minute distinctions do not affect our analysis.

[5] Presently and at all times relevant to this matter, subdivision (b)(1) of section 288 states that when a person commits an act described in section 288, subdivision (a) by "force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person," he or she has committed a separate and distinct felony. As we are concerned with force here, the change in the language of this subdivision has no impact on our analysis.

along: these acts were "applications of physical force substantially different from *and* substantially greater than that necessary to accomplish the lewd act of feeling their crotches." (*Ibid.*)

### B. Griffin

The defendant in *Griffin, supra,* 33 Cal.4th 1015, relied heavily on the *Cicero* discussion of force to argue that his jury had not been properly instructed on a specialized definition of force and that there was insufficient evidence of force in the rape prosecution against him. On review, the *Griffin* court looked to the statutory definition of rape in section 261, subdivision (a)(2): "Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator . . . [¶] . . . [¶] (2) [w]here it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." With respect to this statute, the Supreme Court discerned no evidence that the Legislature meant the term "force" to have a specialized legal definition. (*Griffin,* at pp. 1022–1023.) Significantly, the Supreme Court observed that there was nothing in the common use of the term "force" or the language of section 261 that would suggest a heightened force requirement like that in *Cicero, supra,* 157 Cal.App.3d at page 474. (*Griffin,* at p. 1023.) The court contrasted the rape statute with section 288 and found a distinction: "The *Cicero* court was clearly focusing on the distinctions between nonforcible lewd acts under section 288, subdivision (a), and forcible lewd acts proscribed by former subdivision (b), now (b)(1), of that section. The court reasoned that in order for the statutory scheme of section 288 to make sense, the Legislature must have intended that the 'force' required to commit a forcible lewd act under subdivision (b) be substantially different from or substantially greater than the physical force inherently necessary to commit a lewd act proscribed under subdivision (a).

"That same distinction does not arise in the context of the rape statute. The element of force in forcible rape does not serve to differentiate between two forms of unlawful sexual contact as it does under section 288. When two adults engage in *consensual* sexual intercourse, whether with or without physical force greater than that normally required to accomplish an act of sexual intercourse, the forcible rape statute is not implicated. The gravamen of the crime of forcible rape is a sexual penetration *accomplished against the victim's will* by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury. As reflected in the surveyed case law, in a forcible rape prosecution the jury determines whether the use of force served to overcome the will of the victim to thwart or resist the attack, *not* whether the use of such force physically facilitated sexual penetration or prevented the victim from physically resisting her attacker. The Legislature

has never sought to circumscribe the nature or type of forcible conduct that will support a conviction of forcible rape, and indeed, the rape case law suggests that even conduct which might normally attend sexual intercourse, when engaged in with force sufficient to overcome the victim's will, can support a forcible rape conviction." (*Griffin, supra*, 33 Cal.4th at p. 1027.)

The Supreme Court therefore concluded that in a rape case, the "question for the jury . . . [i]s simply whether defendant used force to accomplish intercourse with [the victim] against her will, not whether the force he used overcame [the victim's] physical strength or ability to resist him." (*Griffin, supra*, 33 Cal.4th at p. 1028.) No special jury instructions defining force were required. (*Ibid.*) In *Griffin*, the requisite force was shown by evidence that the defendant pinned the minor victim's arms to the floor as he penetrated her vagina with his penis. (*Id.* at p. 1029.)

### C. Guido

A variety of post-*Cicero* and post-*Griffin* decisions, published and nonpublished, have considered the element of force in prosecutions under other sexual offense statutes. In *Guido, supra*, 125 Cal.App.4th 566, the Court of Appeal considered aggravated sexual assault of a child under section 269, subdivision (a)(4). Section 269 provides that the crime of aggravated sexual assault of a child takes place when a person commits one of a number of specified sexual offenses on a child who is under 14 years of age and the perpetrator is more than a specified number of years[6] older than the victim. (§ 269, subd. (a).) In *Guido*, the aggravated sexual assaults were committed by means of rape (§ 269, subd. (a)(1)) and forcible oral copulation (§ 269, subd. (a)(4)). (*Guido*, at p. 569.) As *Griffin, supra*, 33 Cal.4th 1015, controlled the question of the amount of force necessary for the rape-based aggravated sexual assaults, the court considered what amount of force was necessary to establish the aggravated sexual assault of a child by forcible oral copulation. (*Guido*, at pp. 574–575.)

Looking at the *Cicero* and *Griffin* decisions, the *Guido* court observed that the statute prohibiting forcible oral copulation was more like the statute prohibiting rape than like the lewd acts statute. "These concepts [from *Griffin, supra*, 33 Cal.4th 1015] apply equally to the crime of forcible oral copulation. Consensual oral copulation, with or without physical force greater than that normally required to accomplish the act, is not unlawful except when accomplished under circumstances violative of section 288a. As with forcible rape, the gravamen of the crime of forcible oral copulation is a sexual act

---

[6] At the time of the offenses in this case, the perpetrator had to be 10 or more years older than the victim; the period is now seven years. (§ 269, subd. (a), as amended by Stats. 2006, ch. 337, § 6.)

accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury. As with forcible rape, it is only when one participant in the act uses force to commit the act against the other person's will that an otherwise lawful act becomes unlawful." (*Guido, supra*, 125 Cal.App.4th at p. 576.)

The *Guido* court concluded that "Unlike sexual abuse of a child by use of force, a specialized definition of force is not necessary to the crime of forcible oral copulation because a different concept of force is not needed to distinguish between two crimes or to give substance to the Legislature's use of the term 'force,' such as it is in section 288, subdivision (b)(1)." (*Guido, supra*, 125 Cal.App.4th at p. 576.) The fact that the act is " 'accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury,' " is what "makes two otherwise lawful acts criminal." (*Ibid.*) Therefore, "there is no reasoned basis to apply a different concept of the term 'force' to forcible rape and forcible oral copulation and we hold oral copulation by force within the meaning of section 288a, subdivision (c)(2) is proven when a jury finds beyond a reasonable doubt that defendant accomplished an act of oral copulation by the use of force sufficient to overcome the victim's will. The term does not carry a specialized legal definition and the trial court was not required to give the jury a definition of the word 'force.' " (*Ibid.*)

### D. *Forcible Sexual Penetration and the Evidence at Trial*

Asencio was convicted of aggravated sexual assault of a child, not by means of forcible oral copulation and rape as in *Guido, supra*, 125 Cal.App.4th 566, but by violating section 269, subdivision (a)(5): forcible sexual penetration within the meaning of section 289, subdivision (a). Section 289, subdivision (a)(1) provides, "Any person who commits an act of sexual penetration when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person shall be punished by imprisonment in the state prison for three, six, or eight years." We must decide whether sexual penetration committed by force in violation of section 289, subdivision (a)(1) requires physical force substantially greater than that amount of force inherent in the act of sexual penetration.

Here, the reasoning in *Griffin* guides our analysis. Unlike the lewd acts law in *Cicero* but like the rape statute at issue in *Griffin*, the element of force in a forcible sexual penetration offense "does not serve to differentiate between two forms of unlawful sexual contact as it does under section 288." (*Griffin, supra*, 33 Cal.4th at p. 1027.) Just as consensual sexual intercourse between adults does not violate the law against rape, the law against forcible sexual

penetration is not violated when adults engage in consensual sexual penetration, even if that penetration is accomplished by physical force greater than that normally required to accomplish an act of sexual penetration. (See *ibid.*) The gravamen of the crime of forcible sexual penetration is a sexual penetration accomplished against the victim's will by means of force, violence, duress, menace, or the fear of immediate and unlawful bodily injury on the victim or another person, just as forcible rape under section 261, subdivision (a)(2) is sexual intercourse accomplished against the victim's will by force or other listed coercive means. (See *Griffin*, at p. 1027; see also *Guido, supra*, 125 Cal.App.4th at pp. 574–576 [applying *Griffin* rationale to forcible oral copulation].)

Because in these respects the forcible sexual penetration statute is conceptually akin to the rape statute, we discern no reasoned basis to apply a different concept of the term "force" to forcible rape and forcible oral copulation on the one hand (per *Griffin* and *Guido*), and to forcible sexual penetration on the other. We conclude that forcible sexual penetration within the meaning of section 289, subdivision (a)(1) is proven when a jury finds beyond a reasonable doubt that the defendant accomplished an act of sexual penetration by the use of force sufficient to overcome the victim's will. (*Griffin, supra*, 33 Cal.4th at p. 1028; *Guido, supra*, 125 Cal.App.4th at p. 576.)

In considering Asencio's contention that the evidence of force was insufficient to support his conviction of aggravated sexual assault by means of forcible sexual penetration, we must determine only whether, on the record as a whole, any rational trier of fact could find him guilty beyond a reasonable doubt. (*Griffin, supra*, 33 Cal.4th at p. 1028.) We view the evidence in the light most favorable to the prosecution, and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*Ibid.*)

■ The evidence in this case is sufficient to support the jury's determination that Asencio used force, as that term is commonly used and understood, to accomplish forcible sexual penetration against Kimberly G.'s will. First, Asencio pulled down her underwear.[7] Next, he "rolled over onto" her. Then, Asencio rubbed Kimberly G.'s vagina with his finger, "slightly penetrating" it. Asencio's act of pulling down Kimberly G.'s underwear and rolling his adult body on top of this six-year-old child—a move that a reasonable jury

---

[7] Asencio claimed that he "accidentally" pulled her underwear down. The jury was free to reject this account of how it was removed as incredible and to conclude that Asencio pulled it down deliberately. (*People v. Pierce* (1979) 24 Cal.3d 199, 210–211 [155 Cal.Rptr. 657, 595 P.2d 91] [jury evaluates defendant's credibility and may disregard defendant's story of how crime occurred].)

could have concluded immobilized her and pinned her to the bed—are sufficient acts of force to support the jury's findings. Kimberly testified that Asencio touched her "in a bad way," evidence from which the jury could infer that this act was performed against her will. A reasonable jury could find on this evidence that the sexual penetration was committed against Kimberly G.'s will and that Asencio used sufficient force to overcome her will. (See, e.g., *Griffin, supra*, 33 Cal.4th at p. 1029 [holding minor victim's arms to the floor during penetration sufficient to establish force].) Substantial evidence supports Asencio's conviction on count 1.

## II. *Sufficiency of the Evidence of Two Penetrations*

Asencio argues that two of the counts must be reversed because there is only evidence that he penetrated Kimberly G.'s vagina once. There was substantial evidence that Asencio digitally penetrated Kimberly G.: he admitted touching and slightly penetrating her vagina with his finger. This conduct formed the basis of the aggravated sexual assault conviction in count 1 and the lewd act conviction in count 4. Because section 654 prohibits multiple punishments for the same act, the sentence on count 4 was stayed.

The other sex offense Asencio committed was a lewd act on Kimberly G. in violation of section 288, subdivision (a) (count 3). This offense was committed when Asencio placed his erect and exposed penis on her vagina, thereby touching her body with the specific intent to arouse, appeal to, or gratify his or her sexual desires. Penetration is irrelevant for this charge; the contact between Asencio's penis and Kimberly G.'s vagina was more than enough to establish a lewd and lascivious act. Therefore, the evidence supported the jury's findings that there was both digital penetration and a distinct lewd act involving penile/vaginal contact, and Asencio was punished once for each act.

## III. *Effectiveness of Trial and Appellate Counsel*

Asencio argues that trial counsel was ineffective in failing to argue a motion to dismiss the charges for insufficiency of the evidence; that his former appellate counsel was ineffective when she failed to challenge the sufficiency of the evidence to support his conviction on count 1; and that both counsel were ineffective because they failed to recognize that only one act of penetration had occurred. Our conclusions in the above discussion establish that neither trial nor appellate counsel provided ineffective assistance in these respects.

## DISPOSITION

The petition for writ of habeas corpus is denied.

Perluss, P. J., and Woods, J., concurred.

Petitioner's petition for review by the Supreme Court was denied December 10, 2008, S167089.