Filed 12/30/15  P. v. Martinez CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RICHARD RAYMOND MARTINEZ, JR.<br><br>    Defendant and Appellant. | B258260<br>(Los Angeles County<br>Super. Ct. No. VA130890) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Raul Anthony Sahagun, Judge.  Affirmed with directions.

Nancy J. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Mary Sanchez and Andrew S. Pruitt, Deputy Attorneys General, for Plaintiff and Respondent.

In the underlying action, appellant Richard Raymond Martinez, Jr. was convicted of several counts of forcible lewd act upon a child, lewd act upon a child, and aggravated sexual assault of a child. He challenges the sufficiency of the evidence to support the convictions, and contends there was evidentiary error. Respondent maintains that the abstract of judgment fails to reflect certain mandatory fees. We reject appellant's contentions, but conclude that the abstract of judgment does not accurately reflect the fees imposed by the trial court. We therefore affirm the judgment, and direct the preparation of an amended abstract of judgment.

**RELEVANT PROCEDURAL HISTORY**

On June 23, 2014, a 10-count second amended information was filed, charging appellant with offenses under the Penal Code against a female child, A.B.[1] The information alleged that between April 1, 2013 and June 30, 2013, appellant engaged in aggravated sexual assault of a child involving sodomy (§ 269, subd. (a)(3); count 1), aggravated sexual assault of a child involving rape (§ 269, subd. (a)(1); count 2), aggravated sexual assault of a child involving oral copulation (§ 269, subd. (a)(4); count 3), aggravated sexual assault of a child involving sexual penetration (§ 269, subd. (a)(5); count 4), forcible lewd acts upon a child (§ 288, subd. (b)(1)); counts 5, 6, and 7), and lewd acts upon a child (§ 288, subd. (a)); counts 8, 9, and 10). Accompanying all the counts were special allegations that appellant had suffered six prior convictions for forcible lewd acts upon a child or dependent person (§ 288, subd. (b)) constituting serious felonies (§ 667, subd. (a)(1)), felony sex offenses (§ 667.61, subds. (a)(1), (a)(4)), and

---

[1] All statutory citations are to the Penal Code, unless otherwise designated.

strikes within the meaning of the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)).  Appellant pleaded not guilty to all counts and denied the special allegations.

At trial, following presentation of the prosecution's case-in-chief, the court granted appellant's motion under section 1118.1 to dismiss the charge of aggravated sexual assault upon a child involving sexual penetration (count 4). The jury found appellant guilty on the remaining counts.  After finding the prior conviction allegations to be true, the court sentenced appellant to an aggregate term of 105 years to life.

## FACTS

A.  *Prosecution Evidence*

1.  *Appellant's Prior Convictions*

R.A. was born in 1977.  When she was 9 or 10 years old, her mother M. began a relationship with appellant.  At some point, appellant and M. began living together.  When R.A. was 12 or 13 years old, appellant began touching her inappropriately.  He then repeatedly entered her bedroom at night, and inserted his penis in her vagina and anus.  In 1992, after R.A. disclosed appellant's misconduct, he was convicted of six counts of forcible lewd acts on a child or dependent (§ 288, subd. (b)), and sentenced to ten years in prison.

2.  *Current Offenses*

While appellant was serving his term of imprisonment, he and M. married, and following his release from prison, they lived together in an apartment.  R.A.'s sister Nicole married Charles B., with whom she had four daughters, including A.B., who was born in 1999.  When A.B. was 12 years old, she began visiting

3

appellant's home with her parents, who warned her that appellant had engaged in inappropriate conduct with her aunt R.A. A.B.'s visits with appellant occurred on weekends at least twice per month. Although A.B.'s parents initially barred her from being alone with appellant, they later permitted her to be with him without direct supervision, but told A.B. to report any unusual conduct by appellant.

A.B. testified that when she first visited appellant, she enjoyed his company and gave him a card describing him as "the best grandpa ever." According to A.B, after some normal visits, appellant squeezed her "butt" when she took a water bottle from the refrigerator. A.B. did not report the incident because she thought it might have been an accident.

A.B. further testified that during a subsequent visit, when she retrieved coloring pencils from appellant's bedroom, he placed his hands on her waist, turned her around, held her as she resisted, kissed her on the lips, and then pushed his tongue into her mouth. He said that if she told anyone, he would hurt her family. After the incident, appellant kissed A.B. in the same manner "almost every time" she visited him. On each occasion, appellant told her that he would hurt her family if she reported his conduct.

A.B. further testified that on a later occasion, while she was in a bathroom, appellant pushed her against the sink, pulled down her pants and underwear, and put his penis into her anus. Although A. B. told him to stop, he next put his penis into her vagina. Before leaving the bathroom, he said that he would hurt A.B.'s family if she disclosed the incident to them.

A.B. further testified that during a subsequent visit, she was playing with her sisters in the recreation room of appellant's apartment building. Appellant sat down beside her, placed a pillow over their adjoining laps, and rubbed her vaginal area with his hand. He then took her hand and made her rub his penis. Later that

4

day, appellant called A.B. over to him with the promise of ice cream. He pushed her to her knees, placed his hand on her neck, and despite her resistance, placed his penis in her mouth. When A.B.'s father entered the room, appellant quickly pulled up his pants and said that he had been showing A.B. something under a nearby sink. A.B. did not describe what had happened to her father, but later disclosed the incident to her mother, who contacted the police.

Charles B. testified that when he entered the recreation room he saw appellant standing next to A.B., who was underneath the sink. Because appellant seemed nervous, Charles thought that "something was very weird going on there." When he questioned A.B. regarding the incident, she said nothing had happened.

According to A.B., she did not relate the incident to her father "[b]ecause of what [appellant had] sa[id.]" When asked why she never sought immediate aid from her parents regarding appellant's misconduct, she stated: "I didn't want them to know or see because I didn't want them to get hurt. I would have liked to tell somebody so it could have stopped."

After appellant's arrest, several "torn up" letters were found in A.B.'s bedroom. In the letters, A.B. stated that she loved appellant. A.B described all but one of the letters as "lies" that appellant made her write. According to A.B., appellant initially compelled her to write a letter to him during each visit. To avoid writing the letters while visiting, A.B. wrote several in advance of the visits. The letters contained statements that A.B. thought appellant wanted to hear. Regarding the remaining letter, A.B. testified that it contained remarks regarding a boy she knew that were intended to make appellant "jealous." A.B. stated that she wrote the letter to "[s]ee if [she could] get [appellant] to stop or make him jealous

5

or something to stop ."  She stated:  "I did not like what he was doing, but . . . if he thought that I liked him maybe he'd leave me alone and stop."[2]

B.  *Defense Evidence*

Appellant's wife M. Martinez testified that in 1991, shortly after appellant was arrested for sexually abusing R.A., she asked R.A. whether the allegations against appellant were true.  According to M., R.A. replied, "No, Mommy, he didn't do that."  In 1992, M. married appellant.  She stated that she would not have done so had she believed that appellant molested R.A.

M. further testified that when A.B. visited her, A.B.'s parents instructed A.B. never to be alone with appellant, and A.B.'s father watched her closely.  According to M., A.B. displayed a very strong affection for appellant.  M. observed nothing suggesting that appellant was sexually abusing A.B.

Appellant denied engaging in any type of sexual misconduct with A.B. or R.A.  Appellant stated that he entered a plea of no contest to the charges regarding R.A. only because he received poor legal representation and wished to avoid a long prison term.

Appellant further testified that after his arrest for allegedly sexually assaulting A.B., he was interviewed by Los Angeles County Sheriff's Department Detective Rudy Acebedo.  Appellant told Acebedo that he never touched A.B. sexually.  Appellant denied telling Acebedo that he had sodomized R.A., that he

---

[2]     Jan Hare, a forensic nurse, testified that she examined A.B. and found no physical traces of vaginal or anal penetration.  Hare further testified that because A.B. had undergone puberty, the absence of such traces was consistent with appellant's alleged misconduct.

had a sexual impulse problem, and that he would benefit from sexual impulse counseling.**3**

C. *Prosecution Rebuttal*

Detective Acebedo testified that on July 4, 2013, he interviewed appellant for approximately one hour and fifteen minutes. The prosecution presented a four-minute excerpt from a video recording of the interview. During that excerpt, appellant admitted the truth of R.A.'s accusations, stating that what he did was "pretty horrible" and that he wished he were dead. On cross-examination, Detective Acebedo testified during the interview, he "ruse[d]" appellant, that is, falsely stated that he possessed "certain evidence" regarding appellant's misconduct relating to A.B.

D. *Defense Rebuttal*

Appellant testified that during the interview, Detective Acebedo said that, appellant's DNA had been found in A.B.'s mouth. Because that remark was false, appellant provided false information to Detective Acebedo, including the statements regarding R.A. reflected in the video recording presented to the jury.

## DISCUSSION

Appellant contends (1) there was insufficient evidence to support the convictions, (2) the evidence of his prior convictions relating to R.A. was improperly admitted, and (3) the trial court committed evidentiary error related to the prosecution's rebuttal evidence. Respondent maintains that the court, in

---

**3**    Ana Maria Sandoval, appellant's neighbor, testified that he was a friendly, caring, and loving person who helped her with her children.

7

sentencing appellant, incorrectly failed to impose certain mandatory fees. For the reasons discussed below, we reject appellant's contentions, but conclude the judgment must be modified to reflect additional fees.

A. *Sufficiency of the Evidence Regarding Appellant' Offenses*

Appellant challenges the sufficiency of the evidence to support his convictions for aggravated sexual assault of a child (counts 1 through 3), and forcible lewd acts upon a child (counts 5 though 7). As elaborated below (see pts. A.2. & A.3, of the Discussion, *post),* those counts were predicated on appellant's act of kissing A.B. when she retrieved coloring pencils in the bedroom, and his sexual abuse of A.B. during later visits when she was in the bathroom and recreation room. Appellant contends there is insufficient evidence that he acted with the levels of force or duress required for the offenses. As explained below, we disagree.[4]

1. *Governing Principles*

---

[4] "'The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. [Citations.]' [Citation.]" (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

8

The pertinent offenses required proof that appellant used force, duress, or some other improper means in committing the crime. Under counts 1 through 3, appellant was convicted of aggravated sexual assault of a child pursuant to subdivisions (a)(1), (a)(3), and (a)(4) of section 269, which define offenses against victims under 14 years of age involving rape, sodomy, and oral copulation, as specified in enumerated statutes.[5] Those statutes required the prosecution to show that the acts of rape, sodomy, and oral copulation were accomplished "against [the victim's] will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury . . . ." (§§ 261, subd. (a)(2), 286, subd. (c)(2), 288a, subdivision (c)(2).) Under counts 5 through 7, appellant was convicted of forcible lewd acts upon a child pursuant to subdivision (b)(1) of section 288, which contains a similar -- but not identical -- provision that requires a showing of the use of "force, violence, duress, menace, or fear of immediate and unlawful bodily injury," but lacks any reference to the victim's will.[6]

---

[5] Section 269 provides in pertinent part: "(a) Any person who commits any of the following acts upon a child who is under 14 years of age and seven or more years younger than the person is guilty of aggravated sexual assault of a child: [¶] (1) Rape, in violation of paragraph (2) or (6) of subdivision (a) of Section 261. [¶] . . . [¶] (3) Sodomy, in violation of paragraph (2) or (3) of subdivision (c), or subdivision (d), of Section 286. [¶] (4) Oral copulation, in violation of paragraph (2) or (3) of subdivision (c), or subdivision (d), of Section 288a."

[6] Subdivision (a) of section 288 prohibits the commission of a "lewd or lascivious act" on a child under the age of 14 years "with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires" of the perpetrator or the victim. Subdivision (b)(1) of section 288 defines an aggravated form of that offense committed "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury . . . ." (*People v. Soto* (2011) 51 Cal.4th 229, 237 (*Soto*).)

The force required for a forcible lewd act upon a child (§ 288, subd. (b)(1)) differs from that necessary for aggravated assault of a child involving rape, sodomy, and oral copulation (§ 269, subds. (a)(1), (a)(3), (a)(4)). "Decisional law makes clear that the definition of the word 'force' in sexual offense statutes depends on the offense involved. To convict for committing a forcible lewd act against a child in violation of section 288, subdivision (b), the prosecution must prove that the defendant used physical force substantially different from or substantially greater than that necessary to accomplish the lewd act itself.[] [Citation.]" (*In re Asencio* (2008) 166 Cal.App.4th 1195, 1200, fn. omitted (*Asencio*).) In contrast, to show aggravated sexual assault of a child by rape and oral copulation, the prosecution must prove the existence of force sufficient to overcome the victim's will. (*Id.* at pp. 1200-1206.) That also appears to be true of sexual assault of a child by sodomy. (See *People v. Hale* (2012) 204 Cal.App.4th 961, 976-979 & fn. 6 (*Hale*).)

The showings of duress required for the offenses of forcible lewd act upon a child and aggravated assault of a child are subject to standards ordinarily stated in identical terms. (*People v. Leal* (2004) 33 Cal.4th 999, 1004-1005; *People v. Cochran* (2002) 103 Cal.App.4th 8, 13 (*Cochran*), disapproved on another ground in *Soto*, *supra*, 51 Cal.4th at p. 248, fn. 12.) "'Duress' as used in this context means 'a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted.' [Citations.] 'The total circumstances, including the age of the victim, and [her] relationship to defendant are factors to be considered in appraising the existence of duress.' [Citation.] Other relevant factors include threats to harm the victim, physically controlling the

10

victim when the victim attempts to resist, and warnings to the victim that revealing the molestation would result in jeopardizing the family.  [Citations.]"  (*Cochran*, *supra*, 103 Cal.App.4th at pp. 13-14.)

Whether the standards for duress relating to the two offenses are fully identical is an unresolved question, in view of our Supreme Court's decision in *Soto*, *supra*, 51 Cal.4th 229.  There, the court concluded that under section 288, subdivision (b)(1), consent is not a defense to the offense because "duress is measured by a purely objective standard . . . ."  (*Soto, supra,* at p. 246.)  Accordingly, "a jury could find that the defendant used threats or intimidation to commit a lewd act without resolving how the victim subjectively perceived or responded to this behavior."  (*Ibid.*)  In so concluding, the court placed special emphasis on the Legislature's deletion of the phrase "'against the will of the victim'" from the "force, violence, duress, menace, or fear" requirement applicable to the current version of section 288, subdivision (b)(1).  (*Soto*, *supra*, 51 Cal.4th at pp. 245-246.)  Because the analogous provisions relating to aggravated assault of a child retain that phrase, it is unclear whether duress in that context is also subject to a purely objective standard.  However, it is unnecessary for us to resolve that question because -- as noted below (see pt. A.3., of the Discussion, *post*) -- there is sufficient evidence that appellant's threats engendered compliance in A.B. with respect to the misconduct charged in counts 1 through 3.

## 2.  *Aggravated Sexual Assault of a Child (Counts 1 through 3)*

We begin with appellant's contention regarding his convictions for aggravated sexual assault of a child, as charged in counts 1 through 3.  During closing arguments, the prosecutor identified the conduct underlying those counts as appellant's act of penetrating A.B.'s anus in the bathroom, his act of penetrating

11

her vagina in the bathroom, and his act of compelling her to perform oral copulation in the recreation room. The prosecutor argued that the acts involved both force and duress.

We conclude the jury could properly have found the requisite force. In *Asencio*, the defendant was convicted of aggravated sexual assault of a child by forcible sexual penetration under section 269, subdivision (a)(5). (*Asencio*, *supra*, 166 Cal.App.4th at p. 1199.) The appellate court held there was sufficient evidence of force to support the conviction, as the record showed the defendant pulled down his six-year-old victim's underwear, rolled onto her, and penetrated her vagina with his finger. (*Id*. at p. 1205.) As the offenses under section 269 charged against appellant are subject to the same standard of force applied in *Asencio* (*Asencio*, *supra*, 166 Cal.App.4th at p. 1200; see *Hale*, *supra*, 204 Cal.App.4th at pp. 976-979 & fn. 6), the record discloses ample evidence of the requisite force. In the bathroom, appellant pushed A.B. against the sink, pulled down her pants and underwear, and put his penis into her anus and vagina. In the recreation room, appellant pushed A.B. to her knees, held her neck, and overcame her resistance in placing his penis in her mouth. Accordingly, the showing of force was sufficient to support appellant's convictions.

We further conclude the jury could properly have found the existence of duress. Prior to the incidents in the bathroom and recreation room, appellant repeatedly threatened to injure A.B.'s family if she revealed his misconduct. Those express threats were effective, as A.B. testified they deterred her from disclosing his abuse. In view of the evidence regarding the efficacy of the actual threats, the jury could properly infer that the existence of a continuing implied threat of harm to A.B. or her family was sufficient to secure the acquiescence of a reasonable person. (*Cochran*, *supra*, 103 Cal.App.4th at pp. 13-14.) Indeed,

although appellant made no express threats in the recreation room before or after his misconduct, A.B. testified that she did not immediately disclose that misconduct because she feared appellant would hurt her family if she did so. Other factors also support the existence of duress, including his relationship to A.B. as her step-grandfather, and his physical control over her during the incidents. (See *Hale*, *supra*, 204 Cal.App.4th at pp. 979-980 & fn. 6 [for purposes of forcible sodomy (§ 286, subd. (c)(2)(A)), duress was shown by evidence that father engaged in the sodomy of his daughter between the ages of 6 and 10, used physical force to accomplish the misconduct, and told her not to reveal his conduct because he could go to prison].)

Pointing to A.B.'s seemingly affectionate letters, appellant suggests his threats did not affect her conduct and that no duress was present. This argument misapprehends our review for substantial evidence. We do not engage in independent fact finding, but instead affirm the jury's determinations if they are supported by any logical inferences grounded in the evidence. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11-14.) That is the case here. In sum, there is sufficient evidence to support appellant's convictions for aggravated sexual assault of a child.


3.      *Forcible Lewd Acts Upon a Child (Counts 5 through 7)*

We turn to appellant's contention regarding his convictions for forcible lewd acts upon a child, as charged in counts 5 through 7. During closing arguments, the prosecutor identified the conduct underlying those counts as appellant's act of kissing A.B. when she retrieved coloring pencils in the bedroom, his act of rubbing A.B.'s vagina in the recreation room, and his act of making A.B.

rub his penis in the recreation room.**7**  The prosecutor argued that each act involved force or duress.

The record discloses sufficient evidence that appellant's conduct in kissing A.B. and making her rub his penis involved the requisite force.  As explained above (see pt. A.1, of the Discussion, *ante*), the force required under section 288, subdivision (b), must be "substantially different from or substantially greater than that necessary to accomplish the lewd act itself." (*Asencio*, *supra*, 166 Cal.App.4th at p. 1200.) Nonetheless, demonstrating that level of force ordinarily "is not a heavy burden." (*People v. Mom* (2000) 80 Cal.App.4th 1217, 1224-1225, disapproved on another ground in *People v. Griffin* (2004) 33 Cal.4th 1015, 1028), as the prosecution is not obliged to show that the defendant used vigorous force during the lewd act.

In *People v. Pitmon* (1985) 170 Cal.App.3d 38, 44-45, disapproved on another ground in *Soto*, *supra*, 51 Cal.4th at p. 248, fn. 12, the defendant took a boy's hand, placed it on his own genitals, and rubbed himself with the boy's hand. Later, he pushed the boy's back slightly as the boy orally copulated him.  (*Id.* at p. 48.)  The appellate court concluded that the defendant's use of the boy's hand as a tool and his pushing the boy's back constituted acts of force, for purposes of section 288, subdivision (b)(1).)  (*Pitmon, supra,* 170 Cal.App.3d at p. 48.)

In *People v. Babcock* (1993) 14 Cal.App.4th 383, 385, the defendant took the hand of his first victim and made her touch his genitals.  He also grabbed the hand of his second victim and placed it on his genitals.  (*Ibid*.)  When she tried to

---

**7**    Although the prosecutor did not fully characterize the relevant kissing, he stated that when it occurred, appellant "held [A.B.] there against her will . . . ." The only incident to which A.B. expressly testified meeting that description is the first occasion appellant kissed her.

pull her hand away, he pulled it back. (*Ibid*.) The appellate court held that the defendant's conduct displayed the requisite level of force with respect to both victims, even though the first victim had not resisted him. (*Id*. at pp. 386-387.) In so concluding, the court remarked that "resistance is not required to prove forcible sexual assault . . . ." (*Id*. at p. 387.)

Here, appellant's misconduct in kissing A.B. and making her rub his penis demonstrated the requisite level of force. In the bedroom, appellant placed his hands on A.B.'s waist, turned her around, held her as she resisted, kissed her on the lips, and pushed his tongue into her mouth. In the recreation room, appellant sat down beside A.B., placed a pillow over their adjoining laps, took her hand and compelled her to rub his penis. Accordingly, in kissing A.B. and making her rub his penis, appellant applied the level of force required under section 288, subdivision (b)(1).

There also was adequate evidence that appellant's acts of rubbing A.B's vagina and making her rub his penis involved duress. Those acts occurred together while appellant sat next to A.B. in the recreation room, shortly before appellant forced her to engage in oral copulation. As explained above (see pt. A.2., of the Discussion, *ante*), the record establishes an implied threat of harm that secured A.B's acquiescence to the abuse in the recreation room, as well as other factors supporting a determination of duress. Accordingly, appellant's acts of rubbing A.B's vagina and compelling her to rub his penis involved duress, for purposes of section 288, subd. (b)(1).

*People v. Espinoza* (2002) 95 Cal.App.4th 1287, upon which appellant relies, is distinguishable. There, the defendant was charged with one count of forcible lewd act upon a child and several other offenses. (*Id*. at p. 1295.) The evidence at trial showed that on five occasions, the defendant molested his

intellectually challenged daughter. (*Id*. at pp. 1291-1293.) Although the evidence also showed that the defendant was larger than the victim and that she was scared of him, there was no evidence that he threatened her. (*Id*. at pp. 1292-1293, 1319.) The prosecutor submitted the charge of forcible lewd conduct to the jury solely on a theory of duress. (*Id*. at p. 1319.) In reversing the defendant's conviction for that offense, the appellate court concluded there was no evidence of an express or implied threat adequate to establish duress. (*Id*. at p. 1321.) As explained above, that is not the case here. In sum, there is sufficient evidence to support appellant's convictions for forcible lewd conduct upon a child.

B. *Admission of Prior Offenses*

Appellant contends the trial court erred in admitting evidence of appellant's prior offenses involving R.A. under Evidence Code sections 1108 and 352. For the reasons explained below, we reject the contention.

Subdivision (a) of Evidence Code section 1108 provides that "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code s]ection 1101, if the evidence is not inadmissible pursuant to [Evidence Code s]ction 352."[8] Subdivision (d)(1)(A) of Evidence

---

[8]     Evidence Code section 1101 states that except as provided in section 1108 and other sections, "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." (§ 1101, subd. (a).)

        Under Evidence Code section 352, the trial court has the discretion to exclude evidence when "the probative value of particular evidence is outweighed
*(Fn. continued on next page.)*

16

Code section 1108 defines "[s]exual offense" to include forcible lewd acts on a child or dependent (§ 288, subd. (b)).**9**

In determining whether to admit evidence of appellant's prior offenses under Evidence Code sections 1108 and 352, the trial court was obliged to consider "its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the [trier of fact] . . . , its similarity to the charged offense, its likely prejudicial impact on the [trier of fact], . . . the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission . . . . [Citations.]" (*Falsetta, supra*, 21 Cal.4th at p. 917.) The court's ruling is reviewed for an abuse of discretion. (*People v. Wesson* (2006) 138 Cal.App.4th 959, 969.)

In admitting the evidence of appellant's prior offenses over his objection, the trial court concluded that it fell within the scope of section 1101, and was more probative than prejudicial under section 352. The court stated: "The prior conduct is very similar to the conduct in this case. It involved a girl that was . . . about 13, a member of the family, the defendant had access to her -- virtually the same circumstances. The prior conduct is not more inflammatory . . . [than] in this

by concerns of undue prejudice, confusion or consumption of time. [Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.)

**9** "[T]he Legislature's principal justification for adopting [Evidence Code] section 1108 was a practical one: By their very nature, sex crimes are usually committed in seclusion without third party witnesses or substantial corroborating evidence. The ensuing trial often presents conflicting versions of the event and requires the trier of fact to make difficult credibility determinations. [Evidence Code s]ection 1108 provides the trier of fact in a sex offense case the opportunity to learn of the defendant's possible disposition to commit sex crimes. [Citation.]" (*People v. Falsetta* (1999) 21 Cal.4th 903, 915 (*Falsetta*).)

case, [and] should not [involve] undue consumption of time." The court rejected appellant's contention that the prior offenses were "too stale to be probative," stating: "[T]he incident occurred in 1991. [Appellant] did go to prison for some seven or eight years [for the offenses]. So the appropriate time frame within which to determine whether it is remote would be the time [after] he's released to the present offense, and I don't think it is sufficiently remote . . . ."

Appellant maintains the trial court erred in admitting the evidence because the prior offenses are too remote in time from his current crimes. We disagree. In *People v. Robertson* (2012) 208 Cal.App.4th 965, 970, the defendant was charged with kidnap for rape and related offenses. The evidence at trial showed that in 2009, the defendant lured his victim into a garage, locked it, and sexually assaulted her. (*Id*. at pp. 972-973.) The court admitted, under Evidence Code section 1108, evidence that approximately 34 years earlier, the defendant committed a rape and kidnapping. (*Robertson, supra,* 208 Cal.App.4th at pp. 987-988, 992.) During that incident, the defendant picked up a hitchhiker, drove her to an isolated field, and raped her. (*Ibid*.) In affirming the admission of the earlier incident, the appellate court rejected a contention that it was too remote, stating that "'"substantial similarities between the prior and the charged offenses balance out the remoteness of the prior offenses."'" (*Id*. at p. 992.) Applying that standard, the appellate court determined that the similarities between the earlier crimes and the charged offenses were sufficient to support the trial court's ruling. (*Id*. at pp. 992-994.)

We reach the same conclusion here. As the trial court noted, appellant's prior and current offenses are materially identical. Both involved victims to whom he had access through his relationship to M., and essentially the same misconduct.

In view of those similarities, the trial court did not err in admitting evidence of the prior offenses.

Appellant's reliance on *People v. Harris* (1998) 60 Cal.App.4th 727 is misplaced. There, the defendant, a mental health nurse, was charged with sexual misconduct with female patients who were vulnerable due to their mental condition. (*Harris*, *supra*, 60 Cal.App.4th at pp. 730-731.) The trial court admitted evidence under section 1101 that over 20 years earlier the defendant had brutally raped a woman who had never been one of his patients. (*Harris, supra,* at pp. 733-736, 739.) The appellate court concluded that admitting the evidence was error because the rape was inflammatory, remote in time, and unlike the misconduct with which the defendant had been charged. (*Id*. at p. 741.) In contrast, the offenses charged against appellant are virtually identical to his prior offenses. In sum, the evidence of appellant's prior offenses was properly admitted.[10]

C. *Prosecution's Rebuttal Evidence*

Appellant contends the trial court committed evidentiary error relating to the prosecution's rebuttal. He maintains the court improperly denied his request that the entire video recording of his interview with Detective Acebedo be presented to the jury. In addition, he argues that the court improperly limited his cross-

---

[10]   Appellant contends the admission of his prior offenses denied him due process. However, the admission of evidence under Evidence Code section 1108 does not offend due process when, as here, its potential for prejudice has been properly assessed under Evidence Code section 352. (*Falsetta, supra*, 21 Cal.4th at pp. 917-919.)

examination of Acebedo. As explained below, appellant has shown no reversible error.

### 1. *Underlying Proceedings*

During the defense case-in-chief, appellant denied sexually abusing A.B. and R.A. Appellant further testified that during his interview with Detective Acebedo, he asserted that he "never touched [A.B.] sexually." Appellant denied admitting to Acebedo that he had sodomized R.A., that he had a sexual impulse problem, and that he would benefit from sexual impulse counseling.

Following appellant's testimony, the prosecution sought leave to present a four-minute excerpt from the video recording of appellant's interview with Detective Acebedo. That excerpt disclosed that contrary to appellant's testimony, he admitted his sexual abuse of R.A. to Acebedo. In permitting presentation of the excerpt, the court denied appellant's request that the entire video recording be played in order to show "the context of the interview."

In order to establish the foundation of the excerpt, the prosecution called Detective Acebedo as a witness. During Acebedo's cross-examination, the trial court permitted defense counsel to elicit that in the course of the interview, Acebedo had rused appellant, that is, lied to him regarding the existence of "certain evidence." The court sustained hearsay objections to defense counsel's inquiries whether appellant denied sexually abusing A.B., whether Acebedo told appellant that his DNA had been found in A.B.'s mouth, and whether Acebedo had arranged for A.B. to phone appellant in an effort to secure admissions from him.

During the defense rebuttal, appellant testified that during his interview with Detective Acebedo, he knew Acebedo was providing false information, and

20

he, in return, provided false information to Acebedo, including the statements in the excerpt of the video recording.

## 2. *Exclusion of Complete Video Recording of Interview*

Appellant contends the court erred under Evidence Code section 356 in permitting the presentation of only a four-minute excerpt from the 75-minute long video recording of the interview.[11] He maintains he was entitled to have the jury view the entire video recording, arguing that the excerpt omitted the context of his admissions regarding R.A., which he asserts occurred "amidst a sea of denials" to the charges regarding A.B. We disagree.

"The purpose of [Evidence Code section 356] is to prevent the use of selected aspects of a conversation, act, declaration, or writing, so as to create a misleading impression on the subjects addressed. [Citation.] Thus, if a party's oral admissions have been introduced in evidence, he may show other portions of the same interview or conversation, even if they are self-serving, which 'have some bearing upon, or connection with, the admission . . . in evidence.'" (*People v. Arias* (1996) 13 Cal.4th 92, 156.) Nonetheless, the provision "permits introduction only of statements 'on the same subject' or which are necessary for understanding of the statements already introduced. The 'other conversation' referred to in Evidence Code section 356 must have some bearing upon, or connection with, the admission or declaration in evidence. [Citations.]" (*People*

---

**11** Evidence Code section 356 provides: "Where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party; when a letter is read, the answer may be given; and when a detached act, declaration, conversation, or writing is
*(Fn. continued on next page.)*

21

*v. Breaux* (1991) 1 Cal.4th 281, 302.)  The trial court's ruling under the provision is reviewed for an abuse of discretion.  (*People v. Parrish* (2007) 152 Cal.App.4th 263, 274.)

Under these principles, the trial court may exclude portions of a police interview unrelated to the portion admitted.  In *People v. Chism* (2014) 58 Cal.4th 1266, 1280, the defendant was charged with the robbery of a liquor store and attempted murder of a liquor store clerk.  At trial, the prosecution called a detective to testify about an interview he had conducted with the defendant's accomplice.  (*Id*. at p. 1323.)  After the detective described the accomplice's accounts of the defendant's statements while preparing for the robbery, defense counsel asked the detective whether the accomplice told him that the defendant had said he shot the clerk because he had reached for a gun.  (*Id*. at p. 1324.)  In excluding the evidence, the trial court rejected defense counsel's contention that Evidence Code section 356 required the admission of the defendant's purported post-shooting remark.  Affirming that ruling, our Supreme Court concluded that "[n]othing about what had been presented to the jury was misleading, and the excluded statement had no bearing on the portion of [the accomplice's] interview that had been introduced into evidence."  (*Id*. at p. 1325.)

We reach the same conclusion here regarding the excluded portions of appellant's interview with Detective Acebedo.  The interview remarks introduced into evidence were properly admitted as prior inconsistent statements to impeach appellant's testimony at trial, viz., his denial that he sexually abused R.A. (Evid. Code, § 780, subd. (h)), and as admissions of a party to support the existence of

---

given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence."

prior sexual misconduct regarding R.A. (Evid. Code, §§ 1108, 1240). That portion of the interview cannot be regarding as misleading, as it did not challenge -- or even relate to -- appellant's denial of the current charges regarding A.B., which he asserted at trial. Nor did the excluded portions cast doubt on whether appellant had, in fact, made the remarks reflected in the portion introduced into evidence. In sum, the trial court did not err in rejecting appellant's request that the entire video recording of the interview be presented to the jury.[12]

### 3. *Cross-Examination*

Appellant also contends the trial court improperly sustained the prosecution's objections during defense counsel's cross-examination of Detective Acebedo. As noted above (see pt. C.1., of the Discussion, *ante*), the court sustained hearsay objections to defense counsel's questions whether appellant denied sexually abusing A.B., whether Acebedo told appellant that his DNA had been discovered in A.B.'s mouth, and whether Acebedo had arranged for A.B. to try to secure admissions from appellant. He argues that the court's evidentiary rulings contravened his constitutional rights of due process and confrontation.

Because appellant asserted no constitutional claim regarding the exclusion of the evidence before the trial court, he has forfeited his contention, insofar as it is independent of evidentiary error under state law. (*People v. Streeter* (2012) 54 Cal.4th 205, 236-237.) He also has forfeited any challenge to the rulings based on

---

[12]    Appellant contends the trial court's rulings under Evidence Code section 356 contravened his constitutional rights of due process and confrontation. As the rulings were correct, his contention fails. (*People v. Farley* (2009) 46 Cal.4th 1053, 1101-1103; *People v. Dejourney* (2011) 192 Cal.App.4th 1091, 1104.)

evidentiary error under state law for want of argument that the rulings were incorrect.

Furthermore, we would reject his contention were we to address it, as any error in the rulings was harmless even under the stringent "beyond a reasonable doubt" standard for federal constitutional error articulated in *Chapman v. California* (1967) 386 U.S. 18, 24. During the defense case-in-chief, appellant testified that he denied the allegations of sexual abuse regarding A.B during his interview with Detective Acebedo. Later, during the prosecution rebuttal, Acebedo acknowledged that he tried to "ruse" appellant during the interview. Following that testimony, during the defense rebuttal, appellant stated (1) that he knew that Acebedo was providing him with false information -- including the false information regarding the presence of appellant's DNA in A.B.'s mouth -- and (2) that in response, he made false admissions relating to R.A. reflected in the portion of the interview presented to the jury. The evidence that appellant sought to introduce during Acebedo's cross-examination was thus effectively admitted in other ways, coupled with appellant's explanation of the remarks reflected in the portion of the interview introduced into evidence. Accordingly, it is clear beyond a reasonable doubt that any error in excluding the evidence did not contribute to the jury's verdict. In sum, appellant has failed to show reversible error.

D. *Fees*

Respondent contends the abstract of judgment fails to reflect the trial court's imposition of certain mandatory fees relating to the counts on which appellant was convicted (counts 1 through 3 and 5 through 10). Section 1465.8, subdivision (a), provides that a $40 court operations assessment -- sometimes called a "[c]ourt [s]ecurity [f]ee" -- "shall be imposed" on every conviction for a criminal offense.

24

Similarly, Government Code section 70373 provides that a $30 court construction fee -- sometimes called a "[c]riminal [c]onviction [a]ssessment" -- "shall be imposed" on every conviction for a criminal offense. (Govt. Code § 70373.)

In sentencing appellant to an aggregate term of 105 years to life, the trial court imposed consecutive terms on counts 1, 5, 6, and 7, and concurrent terms on counts 2 and 3. The court stayed punishment on counts 8 through 10, pursuant to section 654. The court also imposed a court security fee of $40 and a criminal conviction fee of $30 "per count." However, the abstract of judgment reflects the imposition of court security fees and criminal conviction fees on only four undesignated counts: specifically, it states that appellant is obliged to pay court security fees totaling $160 and criminal conviction fees totaling $120.

Although the parties agree that the abstract of judgment contains errors relating to the fees, they disagree regarding the precise errors. Respondent argues that the abstract of judgment should reflect the imposition of court security fees and criminal conviction fees on all nine counts. In contrast, appellant maintains the trial court was authorized to impose court security fees on six counts and criminal conviction fees on four counts. We therefore examine the propriety of imposing the fees on all nine counts.

Because section 1465.8, subdivision (a)(1), mandates the imposition of a court security fee "'on every conviction for a criminal offense,'" the trial court correctly imposed that fee on all nine counts (*People v. Schoeb* (2005) 132 Cal.App.4th 861, 865-866, italics omitted), including counts 8 through 10, for which punishment was stayed under section 654 (*People v. Crittle* (2007) 154 Cal.App.4th 368, 370). The abstract of judgment thus must be amended to reflect the imposition of court security fees on each count.

We reach the same conclusion regarding the imposition of criminal conviction fees. Because Government Code section 70373, subdivision (a)(1), mandates the imposition of that fee "on every conviction for a criminal offense," the trial court correctly imposed that fee on all nine counts, including the counts for which punishment was stayed. (*People v. Sencion* (2012) 211 Cal.App.4th 480, 483 (*Sencion*).) The abstract of judgment thus must be amended to reflect the imposition of criminal conviction fees on each count.

Pointing to *People v. High* (2004) 119 Cal.App.4th 1192 (*High*), appellant suggests that criminal conviction fees under Government Code section 70373 may not be imposed on counts 8 through 10, for which punishment was stayed. He argues that those counts, which charged appellant with lewd acts upon a minor (§ 288, subd. (a)), were merely "duplicative" of the offenses of aggravated sexual assault of a child, as they were predicated on the same misconduct. We disagree.

As explained above, Government Code section 70373, by its plain language, mandates the imposition of a fee on "every conviction." Furthermore, the stay of punishment on counts 8 through 10 pursuant to section 654 does not insulate them from the application of Government Code section 70373. Generally, section 654 precludes the imposition of only those fees that are punitive in nature. (*People v. Sharret* (2011) 191 Cal.App.4th 859, 865.) It is well established that a criminal conviction fee under Government Code section 70373 is not punitive. (*Sencion*, *supra*, 211 Cal.App.4th at p. 483.) In *High*, the appellate court examined a different statute -- namely, Government Code section 70372 -- and concluded that the fee imposed under that statute -- which the Legislature expressly designated as a "state court facilities construction penalty" -- serves a punitive purpose. (*High, supra,* 119 Cal.App.4th at pp. 1197-1199.) In sum, the abstract of judgment must

be amended to reflect the imposition of court security fees totaling $360 (§ 1465.8) and criminal conviction fees totaling $270 (Govt. Code, § 70373).

## DISPOSITION

The judgment is affirmed. The trial court is directed to amend the abstract of judgment to correct the errors identified above (see pt. D, of the Discussion, *ante*), and to forward the amended abstract of judgment to the Department of Corrections and Rehabilitation.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MANELLA, J.

We concur:

EPSTEIN, P. J.

COLLINS, J.